GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
THOMAS H. FELL, ESQ.
Nevada Bar No. 3717
E-mail: tfell@gordonsilver.com
CANDACE C. CLARK, ESQ.
Nevada Bar No. 11539
E-mail: cclark@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666

HELLER, DRAPER, HAYDEN,
  PATRICK & HORN, L.L.C.
DOUGLAS S. DRAPER, ESQ. (*Pro Hac Vice*)
Louisiana Bar No. 5073
E-mail: ddraper@hellerdraper.com
WILLIAM H. PATRICK, III, ESQ. (*Pro Hac Vice*)
E-mail: wpatrick@hellerdraper.com
Louisiana Bar No. 10359
LESLIE A. COLLINS, ESQ. (*Pro Hac Vice*)
E-mail: lcollins@hellerdraper.com
Louisiana Bar No. 14891
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone (504) 299-3300
Facsimile (504) 299-3399

*Attorneys for Desert Capital REIT, Inc.*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In re: | Case No.: 11-16624-LBR |
|---|---|
| DESERT CAPITAL REIT, INC., | Chapter 11 (Involuntary) |
| Debtor. | |

## DISCLOSURE STATEMENT REGARDING CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTOR

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

# Table of Contents

1.   INTRODUCTION ................................................................................................. 1

2.   PLAN OVERVIEW AND IMPORTANT NOTICE TO HOLDERS OF CLAIMS .................................................................................................................. 1

3.   RELIANCE ON BANKRUPTCY CODE ............................................................. 2

4.   FORWARD-LOOKING STATEMENTS ............................................................. 2

5.   HEARINGS AND DEADLINES TO OBJECT .................................................... 3

6.   INFORMATION CONCERNING THE DEBTOR .............................................. 3

    6.1.   History of the Debtor .............................................................................3
    6.2.   Factors Leading to the Chapter 11 Case ..............................................4
    6.3.   The Bankruptcy Case and Significant Events .......................................5

7.   OTHER SIGNIFICANT POST PETITION EVENTS ......................................... 5

    7.1.   Description of Assets and their Value ..................................................6
        7.1.1.   Remaining Real Estate Investments of Desert Capital.............6
        7.1.2.   Joint Ventures ..........................................................................6
        7.1.3.   Summary of Assets and Liabilities...........................................6
    7.2.   Purpose of the Plan and Anticipated Future of the Debtor ...................9
    7.3.   Liquidation Analysis .............................................................................9
    7.4.   Future Management of the Debtor ........................................................9

8.   EXPLANATION OF CHAPTER 11 ..................................................................... 9

    8.1.   Overview of Chapter 11 ........................................................................9
    8.2.   Plan of Reorganization ........................................................................10

9.   OVERVIEW OF THE PLAN ............................................................................. 10

    9.1.   General ................................................................................................10
    9.2.   Classification and Treatment Summary ...............................................11
        9.2.1.   Administrative Claims ............................................................11
        9.2.2.   Priority Tax Claims ................................................................12
        9.2.3.   Statutory Fees .........................................................................12
        9.2.4.   Summary of Classified Claims and Interests ..........................12
    9.3.   Executory Contracts and Unexpired Leases .........................................15
        9.3.1.   Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Lease.................................................15
        9.3.2.   Contracts and Leases After Petition Date................................15
        9.3.3.   Reservation of Rights ..............................................................15
        9.3.4.   Additional Cure Provisions .....................................................16
        9.3.5.   Disputed Cure Reserve ...........................................................16
        9.3.6.   Claims Based on Rejection of Executory Contracts and Unexpired Leases ...................................................................16

i

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

9.4.  Means of Implementation of the Plan ................................................................17
    9.4.1.  Transfer of Assets ..........................................................................17
    9.4.2.  Vesting of Assets ..........................................................................17
    9.4.3.  Establishment of the Liquidating Trust and Appointment of
        Liquidating Trustee. ....................................................................17
    9.4.4.  Corporate Existence .....................................................................17
    9.4.5.  Cancellation of Existing Interests in DCR ....................................18
    9.4.6.  Liquidating Trustee's Ability to Operate .......................................18
    9.4.7.  Exemption from Certain Transfer Taxes .......................................18
9.5.  Exemption from Securities Laws .......................................................................19
9.6.  Preservation of Rights of Action; Settlements ...................................................19
    9.6.1.  Retained Causes of Action ...........................................................19
    9.6.2.  Resolution of Ferrar Litigation Against Debtor ............................20
9.7.  Retention of Subsequent Causes of Action ........................................................21
9.8.  Services by and Fees for Professionals ..............................................................21
9.9.  Office of the United States Trustee ....................................................................21
9.10.  Effective Date Conditions .................................................................................21
9.11.  Retention of Jurisdiction ...................................................................................22
9.12.  Effects of Confirmation ....................................................................................23
    9.12.1.  Binding Effect ..............................................................................23
    9.12.2.  Release of Liens ...........................................................................23
9.13.  Plan Injunction .................................................................................................24
9.14.  Exculpation and Limitation of Liability ............................................................24
9.15.  Plan Supplement ...............................................................................................25
9.16.  Rights of Defendants in Avoidance Actions ......................................................25
9.17.  The Liquidating Trust and Liquidating Trustee ..................................................25
    9.17.1.  Generally .....................................................................................25
    9.17.2.  Establishment of the Liquidating Trust ........................................25
    9.17.3.  Purpose of the Liquidating Trust ..................................................25
    9.17.4.  Appointment of the Liquidating Trust Board ................................26
    9.17.5.  Appointment of the Liquidating Trustee ......................................26
    9.17.6.  Resignation of the Liquidating Trustee ........................................26
    9.17.7.  Resolution of Disputes Over Membership of Liquidating Trust
        Board ...........................................................................................27
    9.17.8.  Powers of the Liquidating Trustee ...............................................27
    9.17.9.  Payment of Expenses Incurred by the Liquidating Trust ..............29
    9.17.10.  Exculpation and Indemnification of the Liquidating Trustee and
        the Liquidating Trust Board .........................................................29
    9.17.11.  Retention of Funds Prior to Distribution ......................................29
    9.17.12.  Distributions to Liquidating Trust Beneficiaries ..........................30
    9.17.13.  Representation of Liquidating Trust .............................................30
    9.17.14.  Termination of the Liquidating Trust ............................................30
    9.17.15.  Transferability .............................................................................30
    9.17.16.  Delivery of Distributions or Unclaimed Distributions ..................31
    9.17.17.  Withholding and Reporting Requirements ....................................31
    9.17.18.  Setoffs and Recoupment ..............................................................31
9.18.  Modifications or Withdrawal of the Plan ...........................................................32

ii

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

10.    CONFIRMATION OF THE PLAN ................................................................. 32

    10.1.    Solicitation of Votes; Voting Procedures ..........................................32
    10.2.    Requirements for Confirmation of a Plan..........................................32
    10.3.    Confirmation Without Acceptance of All Impaired Classes --
         "Cramdown" ......................................................................................35

11.    RISK FACTORS .......................................................................................... 36

    11.1.    Confirmation Risks ...........................................................................36
    11.2.    Conditions Precedent ........................................................................36

12.    LIQUIDATION ALTERNATIVE TO CONFIRMATION AND
        CONSUMMATION OF THE PLAN............................................................ 36

13.    FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ................. 37

    13.1.    Statutory Overview ...........................................................................37
    13.2.    Tax Consequences to the Debtor .......................................................37
        13.2.1.    Net Operating Loss Carry Forwards .....................................37
        13.2.2.    Cancellation of Indebtedness Income....................................38
    13.3.    Tax Consequences to Holders of Claims ...........................................38

14.    RECOMMENDATION AND CONCLUSION ............................................. 40

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

iii

102999-002/1320609_2

**DISCLAIMER: NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF THE ACCOMPANYING PLAN HAS BEEN APPROVED BY THE BANKRUPTCY COURT. AS OF THE FILING OF THIS DISCLOSURE STATEMENT, NO HEARING ON THE APPROVAL OF THE DISCLOSURE STATEMENT OR CONFIRMATION OF THE PLAN HAS BEEN SET. THE DEBTOR WILL PROVIDE SEPARATE NOTICE, CONSISTENT WITH APPLICABLE BANKRUPTCY RULES, OF ANY SUCH HEARINGS AND OF THE DEADLINES FIXED BY THE COURT FOR OBJECTION TO THE PLAN OR THIS DISCLOSURE STATEMENT.**

## 1.    INTRODUCTION

Desert Capital REIT, Inc. ("DCR" or, the "Debtor"), Debtor and Debtor-in-possession in the above captioned Chapter 11 case (the "Chapter 11 Case") pending before the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), respectfully proposes this Disclosure Statement Regarding the Chapter 11 Plan of Reorganization of the Debtor (the "Disclosure Statement"). The Debtor is distributing this Disclosure Statement in connection with its solicitation of votes on the Debtor's Chapter 11 Plan of Reorganization (the "Plan"). All holders of Impaired Claims and Impaired Interests in the Debtor are urged to read the Disclosure Statement and Plan in full. The board of directors and the management of the Debtor believe that the plan is in the best interests of holders of Impaired Claims against, and Impaired Interests in, the Debtor. A copy of the Plan is attached hereto as **Exhibit "1."** Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed thereto in the Plan (see Section 2 of the Plan entitled "Defined Terms").

## 2.    PLAN OVERVIEW AND IMPORTANT NOTICE TO HOLDERS OF CLAIMS

The Plan contemplates the establishment of a Liquidating Trust or other similar structure (Liquidating Trust) and the appointment of a Liquidating Trustee with all powers set forth in a Liquidating Trust Agreement. The Liquidating Trustee will sell or liquidate all Liquidating Trust Assets that are vested in the Liquidating Trust and use the proceeds thereof to pay the costs and expenses of the wind down of the Debtor, including the present and estimated future expenses and costs of the Liquidating Trust, and to make distributions to holders of unclassified claims, Allowed Claims and Allowed Interests as provided in the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR ON YOUR DECISION TO SUPPORT CONFIRMATION OF THE PLAN. PLEASE READ THIS DOCUMENT AND THE PLAN WITH CARE AND IN THEIR ENTIRETY.**

The Debtor submits that this Disclosure Statement contains information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor, typical of the Holders of Claims against and Interests in the Debtor, to make an informed judgment with respect to the Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

1

102999-002/1320609_2

No person has been authorized to give any information or to make any representation about the Plan not contained in this Disclosure Statement. The statements in this Disclosure Statement are made as of the date hereof. Neither the Disclosure Statement's distribution nor the Plan's consummation will, under any circumstance, create any implication that the information herein is correct at any time after the date hereof. All summaries herein are qualified by reference to the Plan as a whole. Unless otherwise indicated, the Debtor's management has provided the factual information in this Disclosure Statement and financial information contained herein is unaudited. The Debtor believes that the information herein is accurate but is unable to warrant that it is without any inaccuracy or omission.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3016 and not necessarily in accordance with federal or state securities laws or other laws governing disclosure outside the context of Chapter 11. This Disclosure Statement has been neither approved nor disapproved by the Securities and Exchange Commission, nor has it passed upon the accuracy or adequacy of the statements contained herein.

In making a decision in connection with the Plan, holders of Impaired Claims and Impaired Interests must rely on their own examination of the Debtor and the terms of the Plan, including the merits and risks involved. They should not construe the contents of this Disclosure Statement as providing any legal, business, financial, or tax advice and members of each class should consult their own advisors with respect to those matters.

## 3.    RELIANCE ON BANKRUPTCY CODE

The Debtor is relying on provisions of the Bankruptcy Code in order to terminate the interests of the holders of Interests in the Debtor and to terminate the classification of Desert Capital as a qualified Real Estate Investment Trust (REIT) under the Internal Revenue Code.

## 4.    FORWARD-LOOKING STATEMENTS

The information presented in this Disclosure Statement includes forward-looking statements in addition to historical information. These statements involve known and unknown risks and relate to future events, the Debtor's future financial performance or the Debtor's projected business results. In some cases, you can identify forward-looking statements by terminology such as "may," "will," "should," "expects," "plans," "anticipates," "believes," "estimates," "predicts," "targets," "potential" or "continue" or the negative of these terms or other comparable terminology. Forward-looking statements are only predictions. Actual events or results may differ materially from any forward-looking statement as a result of various factors, including those contained in the section entitled "Risk Factors" and other sections of this Disclosure Statement, including the documents incorporated by reference herein. Although the Debtor believes that the expectations reflected in the forward-looking statements are reasonable, the Debtor cannot guarantee future results, events, levels of activity, performance or achievements. Debtor expressly disclaims a duty to update any of the forward-looking statements.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

2

## 5.    HEARINGS AND DEADLINES TO OBJECT

The Debtor is requesting hearings on the approval of this Disclosure Statement and the confirmation of the Plan. As required under the applicable Bankruptcy Rules, the Debtor will give all parties in interest at least 28 days' notice of the deadline to file objections and the hearing with respect to this Disclosure Statement, unless some other, shorter period is ordered by the Bankruptcy Court, and will further provide notice of all relevant deadlines fixed by the Bankruptcy Court regarding objections and voting.

## 6.    INFORMATION CONCERNING THE DEBTOR

### 6.1.    History of the Debtor

DCR is a Maryland corporation formed in December 2003 as a real estate investment trust.  When DCR first began conducting business, it operated as a hard money lender that specialized in the financing of real estate projects by providing short-term mortgage loans to homebuilders and commercial developers in markets which were primarily in the western United States and Las Vegas in particular.

Historically, DCR invested in 12- to 18-month first- and second-lien mortgage loans, consisting of acquisition and development, construction, and commercial property loans to both local and national developers and homebuilders.  DCR derived its revenues primarily from interest payments received from mortgage investments funded with its equity capital and with borrowed funds.

In late 2007, as the national real estate economy started to essentially collapse, DCR began experiencing a significant level of borrower defaults, and in 2008 and 2009, virtually all of DCR's borrowers defaulted on their loans with DCR.  By December 31, 2010, DCR had exercised its rights with respect to all but two mortgage loans totaling $6.1 million, and had foreclosed on the properties securing the vast bulk of its original mortgage loan portfolio.

To foreclose on a property, DCR established a process by which it would take title to the property through a limited liability company (a "Foreclosure LLC").  Where DCR owned 100% of the foreclosed loan, DCR would own 100% of the applicable Foreclosure LLC.  However, if there were other participants in a mortgage loan, DCR would own its proportionate share of such Foreclosure LCC acquiring title to the foreclosed collateral.

As a consequence of these foreclosures, DCR owns 100% of some Foreclosure LLCs and owns fractional interests in other Foreclosure LLCs.  These Foreclosure LLCs own the properties that were formerly the collateral for the loans.  The vast majority of the Foreclosure LLCs own raw land.

Due to the fact that the assets of the Foreclosure LLCs consist primarily of undeveloped or partially developed land, none of the properties has produced sufficient revenue to pay operating costs or pay property taxes and servicing fees to the servicer, CM Capital Services LLC, an affiliate of the Debtor, to manage the Foreclosure LLCs on an ongoing basis.  To fund these costs, the Foreclosure LLCs have been required to obtain loans from third-party lenders. These new loans from third-party lenders are secured by liens on the assets of the individual

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

3

102999-002/1320609_2

Foreclosure LLC.  The Debtor believes that the loans to the Foreclosure LLCs should not have included fees for CM Capital Services LLC.

As a result of the significant deterioration in the performance of DCR's loan portfolio and the substantial increase in real estate owned and real estate investments in limited liability companies through foreclosures, DCR's traditional source of working capital from its normal loan portfolio operations was virtually eliminated.  Thus, DCR's severely restricted ability to general revenue from its investment loan portfolio forced it to resort to the incurrence of debt and the sale of its properties in order to generate cash to fund its operating expenses and make its debt payments.

In addition, the Debtor paid exorbitant fees to CM Capital Services LLC (an entity owned by insiders of the Debtor), which also contributed to the financial condition of the Debtor.

### 6.2.    Factors Leading to the Chapter 11 Case

On April 29, 2011, the largest unsecured creditors of DCR comprised of Taberna Preferred Funding VI, Ltd., Taberna Preferred Funding VIII, Ltd., and Sage Trust and its participants (hereinafter referred to as the "Warm Jones Lenders") (collectively, the "Petitioning Creditors"), filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against DCR, thereby commencing the bankruptcy case.  The Petitioning Creditors filed the involuntary petition with the goal to replace the Debtor's then current management and implement a court supervised liquidation of DCR's assets on the heels of recognized losses of approximately $143 million over the past three years.

Upon the filing of the involuntary petition, DCR and the Petitioning Creditors engaged in negotiations to avoid litigation and to create a satisfactory process to maximize value and minimize costs for the wind down and liquidation of DCR and its complicated business transactions.  As a result of those discussions, the Petitioning Creditors and DCR agreed on a general process to provide for the liquidation of DCR's assets, an investigation of claims of the estate related to its financial demise, and a distribution of the proceeds of the liquidation and recoveries based on claims in accordance with the priorities established in the Bankruptcy Code.

To accomplish this wind down and liquidation, it was agreed that the chief executive officer of the company, Todd Parriott, should immediately resign as president of and as a board member of DCR.  The resignation of Mr. Parriott occurred on May 31, 2011.  It was also agreed by DCR and the Petitioning Creditors that Mr. David M. Bagley, of MorrisAnderson & Associates ("MorrisAnderson"), should be retained as Chief Operating Officer with the title of President of DCR and elected to the board of directors of DCR as its Chairman.  In addition, DCR agreed to consent to an order for relief in connection with the involuntary petition.

All directors of the Debtor have resigned with the exception of Mr. Bagley.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

4

102999-002/1320609_2

### 6.3.      The Bankruptcy Case and Significant Events

Significant Motions Filed By the Debtor:

In the course of the case, the Debtor has filed a number of motions seeking relief from the Court.  The following are the significant motions that have been filed to date:

1.      Retention of Counsel - The Debtor has filed Motions to Retain:

      a.      The Law Firm of Heller, Draper, Hayden, Patrick & Horn, L.L.C. Counsel for the Debtor (granted by Court on July 25, 2011)

      b.      Gordon Silver as Nevada Counsel (granted by Court on July 25, 2011)

2.      Application to Employ David Bagley and MorrisAnderson, Advisory and Management Services for the Debtor (application to be heard on August 10, 2011). An objection to the Application of MorrisAnderson was filed by the Office of the Trustee asserting that MorrisAnderson was a not a disinterested person under the Bankruptcy Code.   The objection has been resolved and the Debtor has filed a new motion to employ MorrisAnderson as Chief Restructuring Officer.  Under the agreement, Mr. Bagley will resign as a director.

3.      Consent to the Entry of an Order for Relief Under Chapter 11.

4.      Motion to Reject Loan Servicing Agreements with CM Capital Services, LLC ("CMC") and Advisory Agreement with CM Group, LLC ("CMG"). This Motion was granted by Court Order on July 25, 2011.  The order terminated the Advisory Agreements and Loan Servicing Agreement between the Debtor and CMC and CMG.  The Debtor believed that the costs and expenses incident to the Loan Servicing Agreement and Advisory Agreements were not beneficial to the estate and that the services provided under the agreements could be performed at a much lower cost to the estate.

## 7.      OTHER SIGNIFICANT POST PETITION EVENTS

1. Desert Capital owns, indirectly through a wholly owned limited liability company (Desert Capital TRS Galleria), an office building in Henderson, Nevada, which serves as its corporate headquarters. The building is approximately 40,000 square feet. The building is presently 86% occupied. Approximately 13,500 square feet of office space is leased to related parties under month-to-month leases and approximately 20,000 square feet is leased to unrelated third parties under long-term operating leases that are cancelable on sixty days written notice by either party. Bank of Nevada holds a security interest on the building. Desert Capital REIT has guaranteed this debt in the event of nonpayment or in the event that the liquidated value of the building is not sufficient to cover the outstanding mortgage debt.   Desert Capital merely for financial reporting purposes classified the asset value as impaired.   The building is being foreclosed upon by the Bank of Nevada.

2. Through a wholly owned subsidiary, 3MO, LLC, Desert Capital owns the land and a building located at 4740 S. Arville, Las Vegas, Nevada that it foreclosed on in April 2009. Desert Capital has an agreement with an unrelated third party to lease the 10,000 square foot

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

5

102999-002/1320609_2

facility and operate a business on the premises.  The monthly rental is $40,000.00 per month; however, the lessee is only able to pay $10,000.00 per month.  The outstanding debt on the building is approximately $6,000,000.00.  The Debtor has agreed to deed this property to the lender in lieu of foreclosure.

3.    During the Chapter 11 Case, the Debtor through various LLCs owned by it has received the following distributions:

| Date | Check number | Amount | To/From | Purpose |
|------|-------------|--------|---------|---------|
| 9-Jun | Transfer | 32,600.00 | Desert Capital TRS | Loan from LLC |
| 30-Jun | Deposit | 10,000.00 | 3MO LLC | Rent from LLC |
| 30-Jun | Deposit | 90,736.11 | CM Midbar LLC | LLC distribution |
| 7-Jul | Deposit | 19,333.00 | Sedora Holdings LLC | LLC distribution |
| | Total | 152,669.11 | Distributions from LLC interests | |

### 7.1.    Description of Assets and their Value

#### 7.1.1.    Remaining Real Estate Investments of Desert Capital

According to the most recent Form 10-Q of Desert Capital, the following table represents the carrying value of its mortgage investments, real estate owned and investments in real estate assets at March 31, 2011:

| | |
|---|---|
| Mortgage investments | $5,538,000 |
| Real estate owned | $3,318,000 |
| Investments in real estate | $3,425,000 |

#### 7.1.2.    Joint Ventures

Desert Capital was also engaged in two joint venture agreements with a third-party homebuilder (Harmony Homes) for the construction of single family homes in Las Vegas, Nevada.  The carrying value of these joint ventures at March 31, 2011, was $818,000.  At present only eight lots remain to be sold in one of the ventures, and all homes have been liquidated in the other venture, and are merely awaiting bond release.

#### 7.1.3.    Summary of Assets and Liabilities

At March 31, 2011, the Debtor estimated its total assets at $25.1 million and its total liabilities at $55.7 million, resulting in a stockholders' deficit of $30.6 million. Of its $25.1 million in assets, $12.3 million represented the carrying value of its mortgage and real estate investments, and $11.0 million represented land, building and equipment. In addition, the Debtor is the holder of notes secured by deeds of trust on property located in Kingman Arizona from Sedora Holdings, LLC and Westward Crossing, LLC. James M. Rhodes, a developer in Las Vegas, has guaranteed the Sedora and Westword notes.  On the Sedora note, the Debtor receives a payment of approximately $22,000 per month and Sedora Holdings is current on the note as of the date hereof.  The Westward note is currently in default, and the Debtor is determining the best course of action to maximize the value of the note.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

6

102999-002/1320609_2

The following table contained in the 10-Q filed by the Debtor provides a listing of the Debtor's remaining investment assets (other than claims possessed by the Debtor), and the debt associated with each asset as of March 31, 2011 (dollars in thousands). The debt associated with the assets will mature between September 2011 and December 2011.  It excludes assets that were impaired to a zero carrying value as of March 31, 2011.

| Description | Location | DCR % Ownership | Carrying Value | Related Debt Balance | Value Net of Secured Debt |
|---|---|---|---|---|---|
| Mortgage on undeveloped land (Sedora Note) | Kingman, AZ | 100 % | $ 4,212 | $ - | $ 4,212 |
| Mortgage on undeveloped land (Westword Note) | Golden Valley, AZ | 100 % | 1,257 | - | 1,257 |
| 8.5 acres undeveloped land | Sandy, UT | 4 % | 69 | - | 69 |
| **Mortgage investments** | | | $ 5,538 | $ - | $ 5,538 |
| | | | | | |
| 16 acres of undeveloped land | Houston, TX | 100 % | $ 700 | $ - | $ 700 |
| 52 custom home lots | Springfield, MO | 100 % | 1,193 | - | 1,193 |
| 946 acres of undeveloped land | Roach, MO | 100 % | 1,425 | - | 1,425 |
| **Real Estate Owned** | | | $ 3,318 | $ - | $ 3,318 |
| | | | | | |
| Partially developed homes | Las Vegas, NV | 86 % | $ 391 | $ 369 | $ 22 |
| 14 acres of undeveloped land | Indian Springs, NV | 100 % | 230 | - | 230 |
| 5.0 acres of undeveloped land | Las Vegas, NV | 100 % | 298 | 250 | 48 |
| 5.0 acres of undeveloped land | Las Vegas, NV | 100 % | 282 | 226 | 56 |
| 2.5 acres of undeveloped land | Las Vegas, NV | 100 % | 163 | 126 | 37 |
| 34.7 acres of undeveloped land | Pahrump, NV | 64 % | 322 | 321 | 1 |
| 3.0 acres of undeveloped land | Las Vegas, NV | 76 % | 806 | 722 | 84 |
| **Fully Consolidated Investments in Real Estate** | | | $ 2,492 | $ 2,014 | $ 478 |
| | | | | | |
| 640 acres of undeveloped land | Bullhead City, AZ | 12 % | $ 53 | $ - | $ 53 |
| Industrial building on 2.34 acres of land | Las Vegas, NV | 10 % | 84 | - | 84 |
| 20,180 square foot office building | Las Vegas, NV | 13 % | 22 | - | 22 |
| JV with 9 remaining residential lots | Las Vegas, NV | 30 % | 720 | - | 720 |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

| Description | Location | DCR % Ownership | Carrying Value | Related Debt Balance | Value Net of Secured Debt |
|---|---|---|---|---|---|
| JV with 1 remaining residential home | Las Vegas, NV | 12 % | 54 | - | 54 |
| **Cost and Equity Method Investments in Real Estate** | | | $ 933 | $ - | $ 933 |
| | | | | | |
| **Total Investments in Real Estate and Mortgage Investments** | | | $ 12,281 | $ 2,014 | $ 10,267 |
| | | | | | |
| DCR office land and building | Henderson, NV | 100 % | $ 4,696 | $ 5,867 | $ (1,171) |
| Gentleman's club land and building | Las Vegas, NV | 100 % | 6,000,000 | 6,000,000 | 008 |
| **Total Land and Building** | | | $ 10,974 | $ 11,867 | $ (893) |
| | | | | | |
| | | | $ 23,255 | $ 13,881 | $ 9,374 |

(1) Under the terms of the general guaranty, if the building were to be sold for an amount less than the outstanding debt balance, DCR would be liable for the deficiency.

As evidenced in the preceding table, the $23.3 million in tangible assets is encumbered by first lien debt of $13.9 million.[1]  Assuming a complete liquidation of its assets at the current carrying value, Desert Capital would receive approximately $9.4 million in proceeds that would be available to cover operating costs and for payments to its unsecured creditors.

The largest creditors in this case are Taberna Preferred Funding VI, Ltd. and Taberna Preferred Funding VIII, two collateralized debt obligation funds that together are owed in excess of $30,000,000, and the Warm Jones Lenders.  The Warm Jones Lenders' debt arises out of a guarantee issued by Desert Capital related to property owned by a Foreclosure LLC.  The Taberna debt arises out of a loan where the proceeds were used by Desert Capital to make additional investments.

A number of stockholders in the Debtor also have claims.  These claims arise out of a feature in the investment made by the stockholders, which allows an investor's heir upon death to "put" the investment back to the Debtor and receive the capital originally invested.  The amount any investor could recover was limited to $100,000 per deceased certificate holder.  The Debtor believes that such claims represent damages arising from the purchase or sale of equity securities, which are subject to subordination pursuant to section 510(b) of the Bankruptcy Code, and that these investors will receive no distribution under the Plan.

---

[1]  In addition to the mortgage and real estate assets discussed above, Desert Capital has a note receivable from CM Capital for the purchase of CM Capital with an outstanding principal balance of $14.7 million. The Debtor is unable to determine that value of that promissory note, if any, at this time.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

The Debtor together with its subsidiary, Desert Capital TRS, Inc. ("DCR TRS"), are currently under audit for the 2006, 2007, and 2009 tax years. As a result, the Debtor has included on its Bankruptcy Schedules that sets forth the assets and liabilities of the Debtor a disputed and contingent claim in favor of the Internal Revenue Service for $1,800,000.00 that may be entitled to priority under section 507(a)(8) of the Bankruptcy Code. The Debtor's taxable subsidiary, DCR TRS, has been assessed a liability of $3,800,000 for the same tax years. The Debtor intends to dispute the claims of the IRS.

### 7.2. Purpose of the Plan and Anticipated Future of the Debtor

The Plan is a liquidating plan and does not contemplate the continuation of the Debtor's business. The Liquidating Trustee will sell or liquidate all Liquidating Trust Assets that are vested in the Liquidating Trust. The Plan requires that the net proceeds from the liquidation of assets undertaken by the Liquidation Trustee be distributed to the holders of unclassified claims, Allowed Claims and Allowed Interests to the extent provided therein.

**THE DEBTOR BELIEVES THAT THE PLAN HAS THE SUPPORT OF THE DEBTOR'S LARGEST UNSECURED CREDITORS AND URGES ALL CREDITORS TO VOTE IN FAVOR OF THE PLAN.**

### 7.3. Liquidation Analysis

A Liquidation Analysis, accompanied by assumptions, is attached hereto as **Exhibit "2."**

### 7.4. Future Management of the Debtor

On the Effective Date, the Plan contemplates that the Debtor's assets will be transferred to a Liquidating Trust to be managed by a Liquidating Trustee and a Liquidating Trust Board. Subject to the requirements of section 1129(a)(5) of the Bankruptcy Code, the Liquidating Trustee will be David Bagley and the Board will be comprised of three members who are willing to serve, two of which shall be selected by Taberna and one of which shall be selected by the Warm Jones Lenders. The Liquidating Trustee and the Liquidating Trust Board shall have the responsibility for the oversight of the Debtor's Assets on and after the Effective Date, unless otherwise provided in the Plan or the Liquidating Trust Agreement.

The Debtor will file a Plan Supplement with the Bankruptcy Court on or before the date that is ten (10) days prior to the Confirmation Hearing, which will, among other things, identify the individuals designated by the Taberna and the Warm Jones Lenders to serve on the Liquidating Trust Board. The Plan Supplement also will include the Liquidating Trust Agreement along with the terms of the compensation for the Liquidating Trustee and Liquidating Trust Board.

## 8. EXPLANATION OF CHAPTER 11

### 8.1. Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to Chapter 11, the debtor-in-possession may attempt to reorganize its business for the benefit of the debtor, its creditors, and other parties-in-interest. The commencement of a Chapter 11 case

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition was filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession" unless the bankruptcy court orders the appointment of a trustee. In this Chapter 11 Case, the Debtor has remained in possession of its assets and business operations as Debtor-in-possession.

The formulation of a plan of reorganization or liquidation is the principal purpose of a Chapter 11 case. The Plan sets forth the means for satisfying the claims against, and interests in, the Debtor.

### 8.2.    Plan of Reorganization

Although referred to as a plan of reorganization, a plan may provide for anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In this case, it is the Debtor's intention that a Liquidating Trust be established and a Liquidating Trustee appointed.  The Liquidating Trustee will sell or liquidate all Liquidating Trust Assets and use the proceeds thereof to pay the costs and expenses of the wind down of the Debtor and to make distributions to holders of unclassified claims, Allowed Claims and Allowed Interests as provided in the Plan.

In considering a plan, the bankruptcy court must independently determine that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" test and be "feasible." The "best-interests" test generally requires that the value of the consideration to be distributed to the holders of claims against and equity interests in a debtor under a plan may not be less than those parties would receive if the debtor was liquidated pursuant to a hypothetical liquidation under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization.

The Debtor believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including in particular the "best-interests" test and the "feasibility" requirement.

Classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptance of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified under the plan.

## 9.    OVERVIEW OF THE PLAN

### 9.1.    General

The Plan you are being asked to consider is attached as **Exhibit "1."** The Debtor encourages you to carefully review the Plan prior to voting to accept or reject the Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

The Debtor believes that the Plan provides fair treatment to, and is in the best interest of, all classes of Claims and Interests. The Debtor believes the Plan is feasible and meets the requirements of the Bankruptcy Code. The information contained herein was prepared from information delivered by Debtor's professionals and has been approved by the Debtor's management.

The summary below describes certain major elements of the Plan. The remaining sections of the Plan deal with each of these subjects in greater detail. The actual terms of the Plan are controlling, and this summary will not change and should not be used to construe terms of the Plan.

### 9.2.    Classification and Treatment Summary

The following is a summary of the classification and treatment of Claims and Interests under the Plan. Reference should be made to the entire Disclosure Statement and to the Plan for a complete description of the classification and treatment of Claims and Interests.

**THIS IS ONLY A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. THE PLAN INCLUDES OTHER PROVISIONS THAT MAY AFFECT YOUR RIGHTS. YOU ARE URGED TO READ THE PLAN IN ITS ENTIRETY. THE SUMMARIES OF THE PLAN AND OF OTHER DOCUMENTS REFERRED TO HEREIN DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THOSE DOCUMENTS, AND REFERENCE IS MADE TO THE PLAN AND THE OTHER DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF THEIR TERMS AND PROVISIONS.**

**THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR AND OTHER PARTIES IN INTEREST.   IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN OR THE OTHER OPERATIVE DOCUMENT WILL CONTROL.  THE PLAN AND THIS DISCLOSURE STATEMENT REMAIN SUBJECT TO SUBSTANTIAL MODIFICATION AND/OR SUPPLEMENTATION. IF THE DEBTOR DETERMINES IN ITS BUSINESS JUDGMENT THAT AN ALTERNATE TRANSACTION WOULD PROVIDE A BETTER RETURN FOR THE ESTATE AND ITS CREDITORS, THE DEBTOR WILL PROVIDE, PURSUANT TO A PLAN SUPPLEMENT OR PLAN AMENDMENT, THE APPLICABLE TREATMENT AND MEANS FOR IMPLEMENTATION AS WILL BE EFFECTUATED BY THE ALTERNATE TRANSACTION.**

#### 9.2.1.  Administrative Claims

Subject to the provisions of Article XI of the Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any Assumed Contract, the holder of each Allowed Administrative Claim shall receive in full satisfaction, release, settlement and discharge of, and in exchange for, such

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

11

102999-002/1320609_2

Allowed Administrative Claim:  (a) Cash equal to the unpaid portion of such Allowed Administrative Claim; or (b) such other treatment as agreed to in writing by the Debtor or the Liquidating Trustee and the holder of an Allowed Administrative Claim; provided, however, that holders of Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during this Case will be paid in the ordinary course of business in accordance with the terms and conditions of any written agreement relating thereto.

### 9.2.2.  Priority Tax Claims

On, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor or the Liquidating Trustee, as the case may be, (i) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (ii) payment of such Allowed Priority Tax Claim over a period not to exceed five (5) years from the Petition Date with interest as provided in section 511 of the Bankruptcy Code, or (iii) such other treatment as agreed to in writing with the Debtor or the Liquidating Trustee and the holder of a Priority Tax Claim.

The Debtor intends to file a Motion pursuant to 11 U.S.C. § 505 to determine the outstanding priority tax liability the Debtor has to the IRS.  The IRS, in various letters, has asserted a claim of approximately $1,800,000, and both the liability for the claim and the amount of the claim are disputed by the Debtor.

### 9.2.3.  Statutory Fees

All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Reorganized Debtor. The obligation of the Reorganized Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to Section 1930 of Title 28 of the United States Code shall continue until such time as the Chapter 11 Case is closed, dismissed or converted.

### 9.2.4.  Summary of Classified Claims and Interests

Unless otherwise noted, the Debtor's estimates of the number and amount of Claims or Interests in each class set forth in the table below includes all Claims or Interests asserted against the Debtor without regard to the validity or timeliness of the filing of the Claims or Interests. Thus, by including any Claim in the estimates set forth below, the Debtor is not waiving its rights to object to any Claim or Interest on or before the objection deadline established by the Plan.

| Class 1 Secured Tax Claims | Each holder of an Allowed Class 1 Secured Tax Claim will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, as will have been determined by the Debtor or the Liquidating Trustee, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid |
|---|---|
| Voting: Unimpaired.  No solicitation required.<br>Est. Recovery:  100% | |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

| | |
|---|---|
| | portion of such Allowed Secured Tax Claim, or (ii) such other treatment as agreed to in writing by the holder of the Class 1 Allowed Secured Tax Claim and the Debtor or the Liquidating Trustee, as applicable. Each holder of an Allowed Secured Tax Claim shall retain the Liens securing such Allowed Secured Tax Claim until the Allowed Secured Tax Claim is paid in full. |
| **Class 2: Other Secured Claims**<br><br>Voting: Unimpaired. No solicitation required.<br>Est. Recovery: Debtor believes there are no creditors in this Class. | Each holder of an Allowed Class 2 Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Claim, on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, at the option of the Debtor or the Liquidating Trustee, as applicable, (i) turnover of the collateral securing such Allowed Other Secured Claim, (ii) if the Other Secured Claim is a fully Secured Claim, (A) pre-petition interest due under applicable bankruptcy or non-bankruptcy law and claimed in a Proof of Claim by the Creditor (or in any amendment or supplement thereto permitted by the Bankruptcy Rules, order of the Bankruptcy Court or the Plan) to the extent approved by the Bankruptcy Code or as scheduled by the Debtor, (B) post-petition interest at the contractual rate of interest and, if a contractual default rate is provided in the contract, at the contractual default rate of interest, or, in the absence of a contractual rate of interest, at the Plan Rate, and (C) reasonable attorney's fees and costs to the extent due under applicable bankruptcy or non-bankruptcy law, until such Allowed Other Secured Claim is paid in full, (iii) if the Other Secured Claim is not a fully Secured Claim, subject to the holder of an Allowed Class 2 Other Secured Claim not timely electing the application of Section 1111(b) of the Bankruptcy Code, Cash  in an amount equal to the outstanding principal amount of the Allowed Secured portion of such Other Secured Claim or (iv) such other treatment as agreed to in writing by the holder of an Allowed Other Secured Claim and the Debtor or the Liquidating Trustee not inconsistent with this section (b) and the Bankruptcy Code. |
| **Class 3: Priority Non-Tax Claims**<br><br>Voting: Unimpaired. No solicitation required.<br>Est. Recovery: 100% | Each holder of an Allowed Class 3 Priority Non-Tax Claim will receive, in full  satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, a Distribution of Cash  equal to the due and unpaid portion of such Allowed Claim, plus (A) pre-petition interest due under applicable bankruptcy or non-bankruptcy law and claimed in a Proof of Claim by the Creditor (or in any amendment or supplement thereto permitted by the Bankruptcy Rules, order of the Bankruptcy Court or the Plan) to the extent approved by the Bankruptcy Code or as scheduled by the Debtor, (B) post-petition interest at the contractual rate of interest |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

| | |
|---|---|
| | and, if a contractual default rate is provided in the contract, at the contractual default rate of interest, or, in the absence of a contractual rate of interest, at the Plan Rate, and (C) reasonable attorney's fees and costs to the extent due under applicable bankruptcy or non-bankruptcy law, until such Allowed Claim is paid in full, or (ii) such other treatment as agreed to in writing by the holder of an Allowed Priority Non-Tax Claim and the Debtor or the Liquidating Trustee. |
| **Class 4:  Allowed Senior Unsecured Claims**<br><br>Voting:  Impaired.  Entitled to vote.<br>Est. Recovery: 33% | Each holder of an Allowed Senior Unsecured Claim will receive on account of its Allowed Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, its Ratable Portion of the beneficial interests in the Liquidating Trust, or (ii) such other treatment as agreed to in writing by the Debtor or the Liquidating Trustee and the holder of an Allowed Senior Unsecured Claim. |
| **Class 5:  Allowed General Unsecured Claims**<br><br>Voting:  Impaired.  Entitled to vote.<br>Est. Recovery: 0% | Each holder of an Allowed General Unsecured Claim will receive on account of its Allowed Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, its Ratable Portion of the beneficial interests in the Liquidating Trust, or (ii) such other treatment as agreed to in writing by the Debtor or the Liquidating Trustee and the holder of an Allowed General Unsecured Claim, _provided_ that any Distributions to holders of TruPS Claims from the Liquidating Trust shall be distributed to holders of Senior Unsecured Claims until such Senior Unsecured Claims have been paid in full in accordance with the contractual subordination provisions in the documents under which the TruPS Claims arise. |
| **Class 6:  Allowed 510(b) Subordinated Claims**<br><br>Voting: Impaired-not entitled to vote. Deemed to Reject.<br>Est. Recovery: 0% | On the Effective Date all Allowed 510(b) Subordinated Claims shall have the same priority as a Class 7 Interest, shall be added to the Interests Register and shall be treated for purposes of Distributions under the Plan pari passu with Class 7 Allowed Interests.  Holders of 510(b) Subordinated claims shall receive nothing under the Plan. |
| **Class 7 – Interests**<br><br>Voting: Impaired-not entitled to vote. Deemed to Reject.<br>Est. Recovery: 0% | On the Effective Date all Interests shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Interests shall become null, void and of no force or effect, and all such shares shall immediately be de-listed from all exchanges and other trading facilities.  Holders of Class 7 Interests shall receive nothing under the Plan |

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

14

| |
|---|
| and are conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Code. |

### 9.3.      Executory Contracts and Unexpired Leases

On the Effective Date, all of the Debtor's executory contracts and unexpired leases will be rejected by the Debtor unless such executory contract or unexpired lease:  (a) is expressly being assumed (or assumed and assigned) pursuant to the Plan or is identified on Plan Schedule II as an Assumed Contract pursuant to the Plan; (b) is the subject of a motion to assume pursuant to section 365(a) of the Bankruptcy Code filed on or before the Confirmation Hearing; or (c) has been previously assumed, assumed and assigned, or rejected.

The Debtor has rejected its Advisory Agreement with the CMG and its Loan Servicing Agreement with CMC.  The Debtor does not believe it has any other executory contracts or leases that will not be rejected or terminated by the Effective Date.  The Debtor was a party to a month-to-month lease with Desert Capital TRS, Galleria, TRS, an affiliate of the Debtor.

#### 9.3.1.  Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Lease.

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor and the Liquidating Trustee expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide warranties or continued maintenance obligations on goods or services previously purchased by the Debtor from counterparties to rejected or repudiated executory contracts or unexpired leases to the extent so provided by applicable bankruptcy law.   Additionally, the Reorganized Debtor and the Liquidating Trustee, as may be applicable, reserve the right to collect any amounts owed to the Debtor under such executory contracts or unexpired leases to the extent so provided by applicable bankruptcy law.

#### 9.3.2.  Contracts and Leases After Petition Date

Executory contracts and leases with third parties entered into after the Petition Date by the Debtor, and any executory contracts and unexpired leases assumed by Debtor during the Case, may be performed by the Reorganized Debtor or the Liquidating Trustee, as the case may be, in the ordinary course of business.

#### 9.3.3.  Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is, in fact, an executory contract or unexpired lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is executory or is expired as of the time of assumption or rejection, the Debtor or the Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

### 9.3.4. Additional Cure Provisions

Except as otherwise provided under the Plan, any monetary amounts that must be paid as a "cure" requirement for assumption and/or assignment of any executory contract or unexpired lease by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code, (i) shall be effected or otherwise satisfied by prompt payment of such monetary amount in Cash as contemplated by section 365(b)(1)(A) of the Bankruptcy Code, or (ii) shall otherwise be satisfied through a written agreement between the parties. If there is any dispute regarding (a) the timing of any payment required in order to meet the promptness requirements of 365(b)(1), (b) the nature, extent or amount of any cure requirement, (c) the Debtor's, the Liquidating Trustee's or any assignees' ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, the Cure will occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute.

### 9.3.5. Disputed Cure Reserve

A Disputed Cure Reserve shall be established for the purpose of effectuating Distributions to parties whose Cure Claims are subject to dispute. The Disputed Cure Reserve shall be equal to 100% of the (a) amount of the Disputed Cure Claim or (b) such estimated amount as approved in an order by the Bankruptcy Court. The Liquidating Trustee may request estimation for any Cure Claim.

### 9.3.6. Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any proofs of Claim asserting Claims arising from the rejection of the Debtor's executory contracts and unexpired leases pursuant to the Plan, or otherwise, must be filed no later than thirty (30) days after the later of (a) the Effective Date or (b) entry of an order of the Bankruptcy Court approving the rejection.

Any proofs of Claim arising from the rejection of any of the Debtor's executory contracts or unexpired leases that are not timely filed in accordance with this section shall (1) be disallowed automatically, (2) be forever barred from assertion, (3) shall not be enforceable against any of the Debtor, the Reorganized Debtor or the Liquidating Trust, (4) be deemed fully satisfied, released, discharged, and expunged, notwithstanding anything in the Schedules or in any proof of Claim to the contrary.

Allowed Claims arising from the rejection of the Debtor's executory contracts and unexpired leases shall be classified as a General Unsecured Claims; provided, however, if the holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure the obligations under such rejected executory contract or lease, the Allowed Claim for rejection damages shall be treated as an Allowed Other Secured Claim to the extent of the value of such holder's interest in the Collateral, with the unsecured portion, if any, subject to a timely election pursuant to section 1111(b) of the Bankruptcy Code treated as an Allowed General Unsecured Claim.

Any Claim based upon the rejection of an unexpired lease of real property shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and shall be subject to

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

mitigation of damages by the holder of such Claim. The Reorganized Debtor or the Liquidating Trustee may request estimation for any claim for damages for the rejection of an unexpired lease of real property and the Bankruptcy Court shall consider the likelihood and amount of mitigation in connection therewith.

Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

### 9.4.    Means of Implementation of the Plan

#### 9.4.1.    Transfer of Assets

The Debtor shall transfer to the Liquidating Trust all assets owned by the Debtor.  The assets shall include, but not be limited to, all claims posed by the Liquidating Trustee against the Debtor's Officers and Directors.  The Liquidating Trustee will liquidate all Liquidating Trust Assets that are vested in the Liquidating Trust and use the proceeds thereof to pay the costs and expenses of the wind down of the Debtor, and to make distributions to holders as provided in the Plan.

#### 9.4.2.    Vesting of Assets

On the Effective Date, the Debtor's assets that will be Liquidating Trust Assets shall vest automatically in the Liquidating Trust, free and clear of all Liens, Claims and any other encumbrance, other than as specifically provided for in the Plan.

#### 9.4.3.    Establishment of the Liquidating Trust and Appointment of Liquidating Trustee.

On or prior to the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and accept the assets to be transferred to the Liquidating Trust and the Liquidating Trust will be deemed to be created and effective without any further action of the Debtor or any employees, officers, directors or stockholders of the Debtor. The Liquidating Trust Assets shall be transferred to and vest in the Liquidating Trust free and clear of all Liens, Claims and any other encumbrance, other than as specifically provided for in the Plan. The beneficiaries of the Liquidating Trust are the holders of Allowed Claims against the Debtor and shall be bound by the Liquidating Trust Agreement.

#### 9.4.4.    Corporate Existence

(a)    Corporate Existence

After the Effective Date, the Debtor shall continue to maintain its corporate existence as the Reorganized Debtor solely for the purpose of implementing the Plan and transferring all Assets to the Liquidating Trust.  Thereafter, the Liquidating Trustee shall be authorized but not obligated to take all actions reasonably necessary to dissolve the Debtor and any subsidiaries under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation.  The Liquidating Trustee shall have no liability for using his or her discretion to dissolve or not dissolve any of the Debtor or the subsidiaries.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

(b)    Other General Corporate Matters

On the Effective Date, the Debtor, the Reorganized Debtor and the Liquidating Trustee may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the transactions contemplated by the Plan, including: (1) the execution and delivery of appropriate agreements or other documents that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Debtor, Reorganized Debtor or the Liquidating Trustee determine are necessary or appropriate.

**9.4.5.**  Cancellation of Existing Interests in DCR

On the Effective Date, all Interests in Debtor shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Interests shall become null, void and of no force or effect, except as otherwise set forth in the Plan and all such shares shall immediately be delisted from all exchanges and other trading facilities.

**9.4.6.**  Liquidating Trustee's Ability to Operate

From and after the Effective Date, subject to the Liquidating Trust Agreement, the Liquidating Trustee may use, acquire and dispose of Liquidating Trust Assets and settle and compromise Claims without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order and the Liquidating Trust Agreement.  Without limiting the generality of the foregoing, the Liquidating Trustee may, without application to or approval by the Bankruptcy Court, pay fees incurred after the Effective Date for professional fees and expenses reasonably and necessarily incurred in carrying out his duties.  Specifically, the Liquidating Trustee will sell or liquidate all Liquidating Trust Assets that are vested in the Liquidating Trust and use the proceeds thereof to pay the costs and expenses of the wind down of the Debtor, including the present and estimated future expenses and costs of the Liquidating Trust, and the Liquidating Trustee, and to make distributions to holders of Allowed Claims as provided in the Plan.

**9.4.7.**  Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from or by the Reorganized Debtor or the Liquidating Trust or to any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

### 9.5. Exemption from Securities Laws

The beneficial interests of the Liquidating Trust issued pursuant to the Plan shall be issued pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code. Any securities issued to or transferred by the Liquidating Trust shall be issued or transferred pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code and shall be exempt from taxes pursuant to section 1146(a) of the Bankruptcy Code.

### 9.6. Preservation of Rights of Action; Settlements

#### 9.6.1. Retained Causes of Action

Except to the extent such Retained Causes of Action are otherwise dealt with in the Plan, or are expressly and specifically released in connection with the Plan, the Confirmation Order or any settlement agreement approved during the Case, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all Retained Causes of Action, defenses, and counterclaims of, or accruing to, the Estate shall be retained by and vest in the Liquidating Trust whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Retained Causes of Action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) the Liquidating Trustee does not waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any Retained Cause of Action, defense, or counterclaim that constitutes property of the Estate: (a) whether or not such Retained Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such Retained Cause of Action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a party in any litigation relating to such Retained Cause of Action, defense or counterclaim filed a proof of Claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, voted for or against the Plan, or received or retained any consideration under the Plan.

Retained Causes of Action shall include, without limitation:

(a) Any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities the Debtor may have against any employee, director or officer that is based upon an alleged breach of a confidentiality, non-compete or any other contractual or fiduciary obligations owed to the Debtor or the Reorganized Debtor;

(b) Any and all claims and causes of action that are listed in the Debtor's Schedules, including any transfers identified in the Schedules that may be avoidable under Chapter 5 of the Bankruptcy Code or otherwise applicable law;

(c) Any and all claims and causes of action that are the subject to pending litigation in either the Bankruptcy Court or a non-bankruptcy forum;

(d) Any and all claims against a Person, to the extent such Person asserts a crossclaim, a counterclaim, and/or a claim for setoff that seeks affirmative relief against the Debtor or the Reorganized Debtor; and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

(e)    Any claim of wrongful offset or recoupment against a party entitled to receive distributions under the Plan.

Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RETAINED CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RETAINED CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE PLAN, THIS DISCLOSURE STATEMENT, THE SCHEDULES, OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE DEBTOR, THE REORGANIZED DEBTOR OR THE LIQUIDATING TRUSTEE, TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RETAINED CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTOR OR THE LIQUIDATING TRUSTEE, AS APPLICABLE, HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.

The Liquidating Trust Assets, including the Retained Causes of Action, will be transferred to the Liquidating Trust on the Effective Date.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall be substituted as the party in interest in all adversary proceedings pending on the Effective Date, will have standing, on and after the Effective Date of the Plan, to pursue the Retained Causes of Action and will be deemed appointed as the representative of the Estate for the purpose of enforcing, prosecuting, and settling the Retained Causes of Action. The Liquidating Trust expressly reserves the right to pursue or adopt any claim alleged in any lawsuit in which the Debtor is a party.

The Liquidating Trustee shall have the authority to pursue all Retained Causes of Action that have not been finally resolved by the Debtor prior to the Effective Date.  Pursuit of a Retained Cause of Action may include, but not be limited to, service of a demand letter, settlement negotiation, pursuit of litigation, and any other means available to the Liquidating Trustee to obtain a resolution of such Retained Cause of Action.  In the event the Liquidating Trustee is not able to resolve any Retained Causes of Action, the Liquidating Trustee may pursue Retained Causes of Action by any means authorized under the Plan, Liquidating Trust Agreement, and applicable law, including litigation in such forum as the Liquidating Trustee deems appropriate.  Resolution of the Retained Causes of Action by the Liquidating Trustee shall be in accordance with the requirements and procedures set forth in the Plan and Liquidating Trust Agreement.

### 9.6.2.  Resolution of Ferrar Litigation Against Debtor

In full and final settlement of any Claims asserted against the Debtor in the case styled *Second James, Inc., et. al.  v. Todd Parriott, et. al.*, Case No. A 540243, District Court, Clark County, State of Nevada (the "Ferrar Litigation"), the plaintiffs in the Ferrar Litigation may pursue any claims against the former officers and directors of the Debtor and any insurer thereof free of any stay or injunction arising as a result of the commencement of the Case, under this Plan or in the Confirmation Order. The plaintiffs in the Ferrar Litigation shall have no Claims against the Debtor, and the Confirmation Order shall constitute an order disallowing any proof of claim filed by such plaintiffs for any Claims.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

20

### 9.7.    Retention of Subsequent Causes of Action

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in the Plan or the Confirmation Order shall preclude or estop the Liquidating Trustee or his or her privies, as successors in interest to the Debtor and its privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its rights in connection with the Retained Causes of Action, irrespective of the Person, of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in this Case, the present litigation, and those which may be asserted in any subsequent litigation brought by any Person.  Moreover, the failure to commence any of the Retained Causes of Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel with respect to any Retained Cause of Action.

### 9.8.    Services by and Fees for Professionals

The Reorganized Debtor will be responsible for the payment of fees and expenses incurred by its Professional(s), if any, following the Effective Date without the necessity of Bankruptcy Court approval.

### 9.9.    Office of the United States Trustee

After the Confirmation Date, the Liquidating Trustee will file with the Bankruptcy Court, and serve on the U.S. Trustee, quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidating Trustee will pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

### 9.10.    Effective Date Conditions

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with the Plan:

a.    The Bankruptcy Court shall have entered the Confirmation Order in a form and substance reasonably acceptable to the Debtor, Taberna and the Warm Jones Lenders confirming the Plan (being in the form as filed or amended as provided in the Plan).

b.    The Confirmation Order shall have become a Final Order.

c.    All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained.

d.    The Debtor shall have established, or made provisions with the proposed Liquidating Trustee to establish, each of the Reserves required under the Plan.

e.    There shall not be in effect on the Effective Date any (i) order entered by any court of competent jurisdiction, (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity, or (iii) applicable law in effect staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

f.      No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

g.      All transactions contemplated by the Plan for the implementation thereof on or before the Effective Date shall have been accomplished or waived.

h.      The Debtor, Taberna and the Warm Jones Lenders shall have approved all documents to be executed in connection with the occurrence of the Effective Date of the Plan, including any documents filed as part of the Plan Supplement, which approvals shall not be unreasonably withheld.

i.      All conditions to the consummation of the transactions contemplated by the Plan on or prior to the Effective Date shall have been satisfied or waived.

Within three days of the occurrence of the Effective Date, the Reorganized Debtor shall file and serve a Notice of the Effective Date (to the extent not previously noticed) in the Case.

### 9.11.      Retention of Jurisdiction

Under sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under or related to the Case and the Plan, to the fullest extent permitted by law, including jurisdiction to:

a.      enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, Liquidating Trust Agreement and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Liquidating Trust Agreement or the Confirmation Order;

b.      hear and determine any disputes regarding the interpretation or implementation or breach of any APA;

c.      hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan, the Liquidating Trust Agreement or any order of the Bankruptcy Court;

d.      issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan, the Liquidating Trust Agreement or the Confirmation Order;

e.      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

f.      hear and determine any matters arising in connection with or relating to the Liquidating Trust Agreement, the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Liquidating Trust Agreement or the Confirmation Order;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

g.      enforce all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Case;

h.      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

i.      hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims or Interests against the Debtor and to enter or enforce any order requiring the filing of any such Claim or Interest before a particular date;

j.      hear and determine motions, applications, adversary proceedings, contested matters and other litigation matters filed or commenced after the Petition Date by the Debtor in which the Reorganized Debtor or the Liquidating Trustee have substituted in as a party including proceedings with respect to the rights and claims of the Debtor to recover property in Avoidance Actions, or the prosecution of any retained Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

k.      hear and determine motions, applications, adversary proceedings, contested matters and other litigation matters filed or commenced by the Reorganized Debtor or the Liquidating Trustee after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property or the prosecution of any Retained Causes of Action, or otherwise seeking to collect or recover on account of any Retained Causes of Action;

l.      hear and determine all applications, Claims, adversary proceedings and contested matters pending as of the Effective Date; and

m.      enter a final decree closing the Case.

### 9.12.    Effects of Confirmation

#### 9.12.1. Binding Effect

The provisions of the Plan shall bind the Debtor, any Person issuing securities under the Plan, any Person acquiring property under the Plan, and any Creditor or Interest holder in the Debtor, whether or not the Claim or Interest of such Creditor or Interest holder is impaired under the Plan, and whether or not such Creditor or Interest holder has accepted the Plan, and whether or not such Creditor or Interest holder receives or is entitled to receive anything under the Plan, and the rights if any under the Plan shall be in exchange for, and in complete satisfaction, settlement and release of, all Claims and Interests of any nature whatsoever against the Debtor or the Estate, or Assets.

Neither the Liquidating Trust, the Reorganized Debtor, nor any of their successors or assigns, shall be responsible for any obligations of, or Claims against, the Debtor, except for any such Claims or obligations specifically and expressly provided in the Plan.

#### 9.12.2. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created by the Debtor pursuant to the Plan, on the Effective Date and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

23

102999-002/1320609_2

concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all Liens against any Assets of the Debtor that are transferred to Purchaser or the Liquidating Trust shall be fully released and discharged, and all of the right, title, and interest of any holder of such Liens shall attach to the proceeds, if any.

In addition to, and in no way a limitation of, the foregoing, to the extent the Debtor's property or assets are encumbered by Liens of any nature for which any holder of such Liens does not have an Allowed Claim against the Debtor, such Liens shall be deemed fully released and discharged for all purposes and such holder shall execute such documents as reasonably requested by Debtor or the Liquidating Trustee, as applicable, in form and substance as may be necessary or appropriate to evidence the release of any such Liens of any nature. If such holder fails to execute such documents, the Liquidating Trustee is authorized to execute such documents on behalf of such holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.

### 9.13.    Plan Injunction

The provisions of the Plan shall bind the Debtor, any Person issuing securities under the Plan, any Person acquiring property under the Plan, and any Creditor or Interest holder in the Debtor, whether or not the Claim or Interest of such Creditor or Interest holder is impaired under the Plan and whether or not such Creditor or Interest holder has accepted the Plan and whether or not such Creditor or Interest holder receives or is entitled to receive anything under the Plan. Therefore, except as otherwise provided in the Plan or prior orders of the Bankruptcy Court, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor prior to the Effective Date, or any Person who may claim by or through them, are prohibited from taking any of the following actions against the Debtor, the Reorganized Debtor, the Liquidating Trust, the Liquidating Trust Board, Taberna, the Warm Jones Lenders, the legal, financial or restructuring advisors of any of the foregoing, or each of their respective successors or assigns, or the Estate, assets, properties, or interests in property, on account of any such Claims or Interests:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding to enforce such Claim or Interest; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order regarding such Claim or Interest; (c) creating, perfecting or enforcing any Lien or encumbrance relating to such Claim or Interest; and (d) commencing or continuing, in any manner or in any place, (i) any action or proceeding that is based on a claim or cause of action for which there are releases or exculpations provided in the Plan, or (ii) does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.

### 9.14.    Exculpation and Limitation of Liability

Notwithstanding any other provision of the Plan to the contrary, no holder of a Claim or Interest, no Entities who have held, hold, or may hold Claims against or Interests in the Debtor prior to the Effective Date, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of any of the foregoing, shall have any cause of action or right of action, whether in law or equity, whether for breach of contract, statute, or tort claim, against the Debtor (including its directors, officers and employees), the Reorganized Debtor (including its directors, officers and employees), the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Board, Taberna, the Warm Jones Lenders, the legal, financial or restructuring advisors of any of the foregoing, their respective successors or assigns, or the Estate, assets, properties, or interests in property, for any

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

24

102999-002/1320609_2

act or omission in connection with, relating to, or arising out of, this Case, the proposal and solicitation of the Plan in accordance with section 1125(e) of the Bankruptcy Code, the filing of and pursuit of Confirmation of the Plan, consummation of the Plan, or the administration of the Debtor, the Plan or the property to be distributed under the Plan.

### 9.15.    Plan Supplement

Any exhibits or schedules to be filed as part of the Plan not initially filed with the Plan shall be subsequently filed in a Plan Supplement(s) prior to the Confirmation Hearing. Holders of Claims or Interests may obtain a copy of Plan Supplements upon written request to counsel for the Debtor or may view Plan Supplements online any time through the Bankruptcy Court's PACER System at *www.nvb.uscourts.gov*. The Debtor may amend the Plan Supplement and any attachments thereto, through and including the Confirmation Date.

### 9.16.    Rights of Defendants in Avoidance Actions

Notwithstanding any other provision in the Plan, if a defendant in an action brought by the Debtor or the Liquidating Trustee under sections 547 or 548 of the Bankruptcy Code is ordered to pay the Estate or the Liquidating Trust on account of that Retained Causes of Action and that defendant, thereafter, pays the amount ordered, then that defendant shall be entitled to an Allowed Claim for the amount so paid to the extent provided in section 502(h) of the Bankruptcy Code. Any Claim allowed under this section shall be added to the Claims Register and shall be entitled to treatment and distribution under the Plan as a Class 4 Allowed General Unsecured Claim.

### 9.17.    The Liquidating Trust and Liquidating Trustee

#### 9.17.1. Generally

On or prior to the Effective Date, the Liquidating Trust will be created. Except as otherwise provided in the Plan, on the Effective Date, the Liquidating Trust Assets shall be transferred to and vest in the Liquidating Trust to be administered by the Liquidating Trustee for the benefit of the beneficiaries of the Liquidating Trust. The beneficiaries of the Liquidating Trust are the holders of Allowed Claims against the Debtor.

#### 9.17.2. Establishment of the Liquidating Trust

On or prior to the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and accept the assets to be transferred to the Liquidating Trust and the Liquidating Trust will be deemed to be created and effective without any further action of the Debtor or any employees, officers, directors or stockholders of the Debtor. The liquidating trust assets shall be transferred to and vest in the liquidating trust free and clear of all liens, claims and any other encumbrance, other than as specifically provided for in the Plan. The beneficiaries of the Liquidating Trust are the holders of allowed claims against the Debtor and shall be bound by the Liquidating Trust Agreement.

#### 9.17.3. Purpose of the Liquidating Trust

The Liquidating Trust shall have all the powers of a trust under applicable Delaware law. The Liquidating Trust shall be established for the purpose of liquidating its assets and making post-Effective Date distributions under the Plan, with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall have the authority to execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

instruments as are necessary to implement and consummate the transactions required under or in connection with the Plan, on or after the Effective Date.

On and after the Effective Date, the Liquidating Trust will own the Liquidating Trust Assets and shall act as necessary to liquidate the Liquidating Trust Assets and to enhance or preserve the value of the Liquidating Trust Assets. The Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtor with respect to the assets of the Debtor transferred to the Liquidating Trust, and the Liquidating Trustee shall be authorized to take all actions that the Liquidating Trustee determines is in the best interests of the beneficiaries of the Liquidating Trust.

**9.17.4.** Appointment of the Liquidating Trust Board

(a) On the Effective Date, the Liquidating Trust Board shall be appointed in accordance with the terms of the Liquidating Trust Agreement.

(b) The Liquidating Trust Board shall consist of three members who are willing to serve, two of which shall be selected by Taberna and one of which shall be selected by the Warm Jones Lenders. The composition of the Liquidating Trust Board after the Effective Date shall be governed by the Liquidating Trust Agreement.

(c) The fiduciary duties, as well as the privileges, immunities and protections, that apply to a statutory committee appointed in a case under the Bankruptcy Code shall apply to the Liquidating Trust Board after the Effective Date. The duties and powers of the Liquidating Trust Board shall terminate upon the termination of the Liquidating Trust.

(d) The Liquidating Trust Board's role shall be to advise and consult with the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement. The Liquidating Trust Board shall have the rights and duties set forth in the Liquidating Trust Agreement.

(e) The members of the Liquidating Trust Board shall receive compensation and will be reimbursed for their reasonable expenses from the Liquidating Trust in accordance with the Liquidating Trust Agreement.

(f) The Liquidating Trustee shall be required by the Liquidating Trust Agreement to consult with and report to the Liquidating Trust Board and the authority of the Liquidating Trust Board shall be as set forth in the Plan and the Liquidating Trust Agreement.

**9.17.5.** Appointment of the Liquidating Trustee

The initial Liquidating Trustee will be David Bagley, subject to the later selection of a successor Liquidating Trustee by the Liquidating Trust Board pursuant to the provisions of the Liquidating Trust Agreement. The Liquidating Trustee shall commence serving as the Liquidating Trustee on the Effective Date; provided however, that the party appointed as Liquidating Trustee shall be permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Confirmation Date through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and the Plan.

**9.17.6.** Resignation of the Liquidating Trustee

The Liquidating Trustee may resign at any time by giving written notice to the Liquidating Trust Board and such resignation shall be effective upon the date provided in such notice. In the case of the resignation of the Liquidating Trustee, a successor Liquidating Trustee

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

shall thereafter be appointed by the Liquidating Trust Board in accordance with the terms of the Liquidating Trust Agreement, whereupon such resigning Liquidating Trustee shall convey, transfer and set over to such successor Liquidating Trustee by appropriate instrument or instruments all of the Liquidating Trust Assets then not conveyed or otherwise disposed of and all other assets then in his possession in accordance with the Liquidating Trust Agreement. Without further act, deed or conveyance, a successor Liquidating Trustee shall be vested with all the rights, privileges, powers and duties of the Liquidating Trustee, including the authority to act as the Plan Agent, except that the successor Liquidating Trustee shall not be liable for the acts or omissions of his predecessor(s). Each succeeding Liquidating Trustee may in like manner resign and another may in like manner be appointed in his place.

**9.17.7.** Resolution of Disputes Over Membership of Liquidating Trust Board

Any dispute regarding the rights of Taberna and the Warm Jones Lenders to appoint members of the Liquidating Trust Board in accordance with Section 7.3 of the Plan shall be heard and resolved by the Bankruptcy Court.

**9.17.8.** Powers of the Liquidating Trustee

Subject to the provisions of the Liquidating Trust Agreement and with all the powers of a trustee under applicable law, the Liquidating Trustee shall have the power and authority to perform the following acts, among others:

(a)    accept the Liquidating Trust Assets transferred and provided to the Liquidating Trust pursuant to the Liquidating Trust Agreement and the Plan;

(b)    fund or arrange for the funding of the Plan and administration of the Reorganized Debtor as may be necessary to pay obligations to holders of Allowed Claims under the Plan;

(c)    file, settle, compromise, withdraw, or litigate to judgment any objections to Claims;

(d)    file, settle, compromise, withdraw, or litigate to judgment any motions, applications, adversary proceedings, contested matters and other litigation matters, whether filed or commenced by the Debtor after the Petition Date or by the Liquidating Trustee after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property or the prosecution of any Retained Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

(e)    distribute Liquidating Trust Assets to holders of Allowed Claims (the Beneficiaries, as defined in the Liquidating Trust Agreement) in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(f)    perfect and secure his/her right, title and interest to any and all Liquidating Trust Assets;

(g)    reduce all of the Liquidating Trust Assets to his possession and conserve, protect, collect and liquidate or otherwise convert all Liquidating Trust Assets into Cash;

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

(h)    release, convey, subordinate or assign any right, title or interest in or to the Liquidating Trust Assets;

(i)    pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Liquidating Trust Assets, and to protect the Liquidating Trust and the Liquidating Trustee from liability;

(j)    deposit Liquidating Trust funds and draw checks and make disbursements thereof;

(k)    employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Liquidating Trustee may deem necessary.  The Liquidating Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice; the fees and expenses of all such professionals shall be charges as expenses of the Liquidating Trust and shall be paid upon approval of the Liquidating Trustee;

(l)    employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Liquidating Trust Assets;

(m)    exercise any and all powers granted the Liquidating Trustee by any agreements or otherwise applicable law or any statute that serves to increase the extent of the powers granted to the Liquidating Trustee hereunder;

(n)    take any action required or permitted by the Plan or the Liquidating Trust Agreement;

(o)    execute obligations, whether negotiable or non-negotiable;

(p)    sue and be sued;

(q)    settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Liquidating Trust;

(r)    waive or release rights of any kind;

(s)    appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

(t)    negotiate, renegotiate or enter into any contract or agreements binding the Liquidating Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Liquidating Trustee to be advisable in connection with the performance of his/her duties;

(u)    borrow such sums of money at any time and from time to time for such periods of time upon such terms and conditions from such persons or corporations (including any fiduciary hereunder) for such purposes as may be deemed advisable, and secure such loans with any of the Liquidating Trust Assets, so long as the terms of any

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

such borrowing provide that no recourse shall be had to the Liquidating Trustee, or the Reorganized Debtor or beneficiary of the Liquidating Trust on any such debt; and

(v) in general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times after the Effective Date.

**9.17.9.** Payment of Expenses Incurred by the Liquidating Trust

The Liquidating Trustee, including any successor Liquidating Trustee, may pay the Liquidating Trustee, from the Liquidating Trust Assets, reasonable compensation, as approved by the Liquidating Trust Board, for the Liquidating Trustee's services rendered and reimbursement of expenses incurred. Professionals retained by the Liquidating Trust or the Reorganized Debtor shall be entitled to reasonable compensation from the Liquidating Trust Assets for services rendered and reimbursement of expenses incurred. The payment of the fees and expenses of the professionals retained by the Liquidating Trustee shall be made in the ordinary course of business from the Liquidating Trust Assets.

**9.17.10.** Exculpation and Indemnification of the Liquidating Trustee and the Liquidating Trust Board

The Liquidating Trustee shall perform the duties and obligations imposed on the Liquidating Trustee by this Plan and the Liquidation Trust Agreement with reasonable diligence and care. The Liquidating Trustee, the Liquidating Trust Board, and any member, officer, director or employee of, or attorney or other professional for the foregoing shall not be liable for actions taken or omitted in their respective capacities under the terms of the Liquidating Trust Agreement or this Plan, except to the extent those acts are determined by a final order of a court with jurisdiction to arise out of fraud, willful misconduct, or gross negligence, willful disregard of their duties, or constitute a breach of the Plan or the Liquidating Trust Agreement. In all cases, the Liquidating Trustee and the Liquidating Trust Board shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities and shall be fully protected in acting or in refraining from action in accordance with such advice. The Liquidating Trustee, the Liquidating Trust Board, and any member, officer, director or employee of, or attorney or other professional for the foregoing shall be entitled to indemnification and reimbursement for all losses, fees, and expenses, including but not limited to, attorney's fees and costs, in defending any and all of their actions or inactions except to the extent those acts are determined by a final order of a court with jurisdiction to arise out of fraud, willful misconduct, or gross negligence. Any indemnification claim of the Liquidating Trustee, the Liquidating Trust Board, and any member, officer, director or employee of, or attorney or other professional for the foregoing shall be satisfied solely from the assets of the Liquidating Trust.

**9.17.11.** Retention of Funds Prior to Distribution

The Liquidating Trustee shall collect all Cash constituting Liquidating Trust Assets and, pending distribution, shall deposit such Cash with a FDIC-insured financial institution that has banking services. The Liquidating Trustee will deposit Cash so that it is adequately insured. Notwithstanding the foregoing, the Liquidating Trustee may invest all Cash funds (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the United States Trustee's Office, provided that the Liquidating Trustee shall invest funds held only in demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as Treasury bills. The Liquidating Trustee shall hold all such funds until they are distributed pursuant to the Plan.

29

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

The Liquidating Trustee will not be required to post a bond or be audited or monitored except as otherwise may be expressly provided in the Liquidating Trust Agreement. Forty-five (45) days after termination of the Liquidating Trust, the Liquidating Trustee will (i) file with the Bankruptcy Court, if the Chapter 11 Case is still open, or (ii) serve upon Taberna and the Warm Jones Lenders, if the Chapter 11 Case has been closed, an unaudited written report and accounting showing a summary of the revenues, expenses and distributions of the Liquidating Trust from the Effective Date until the termination of the Liquidating Trust.

### 9.17.12.        Distributions to Liquidating Trust Beneficiaries

The Liquidating Trustee, within a reasonable period after receipt of Cash sufficient to make a Distribution, may distribute such Cash, to the beneficiaries of the Liquidating Trust, after deducting any costs and expenses (or reserves therefore) associated with operation of the Liquidating Trust, as provided by the Plan.

### 9.17.13.        Representation of Liquidating Trust

The professionals employed by the Liquidating Trust are expressly authorized to simultaneously represent any party on any matter not directly adverse to the Liquidating Trust with respect to the particular representation of the Liquidating Trust.

### 9.17.14.        Termination of the Liquidating Trust

The Liquidating Trust shall remain and continue in full force and effect until the earlier of (i) three (3) years from the Effective Date or (ii) the date on which (1) all Liquidating Trust Assets have been distributed or abandoned and (2) all costs, expenses, and obligations incurred in administering the Liquidating Trust have been fully paid in accordance with the provisions of the Plan; provided, however, that if the complete liquidation of the Liquidating Trust Assets and satisfaction of all remaining obligations, liabilities and expenses of the Liquidating Trust pursuant to the Plan has not been completed prior to three (3) years from the Effective Date, the Liquidating Trustee may, with the approval of the Liquidating Trust Board extend the termination date of the Liquidating Trust for a specified period of time in order to complete the purpose of the Liquidating Trust as set forth in the Plan and the Liquidating Trust Agreement.

On the termination date of the Liquidating Trust, the Liquidating Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination. Upon termination of the Liquidating Trust, the Liquidating Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Liquidating Trust other than those attributable to fraud, gross negligence or willful misconduct of the Liquidating Trustee.

### 9.17.15.        Transferability

Neither the Liquidating Trustee nor the Reorganized Debtor will issue to the holders of Allowed Claims against the Debtor certificates in, or other tangible evidence of ownership of, the beneficial interests of the Liquidating Trust being distributed to holders of Allowed Claims pursuant to the Plan. No holder of an Allowed Claim against the Debtor may assign, convey or otherwise transfer any of its right, title or interest in or to the Liquidating Trust except for any such assignment, conveyance or transfer that occurs by will, the laws of descent and distribution or by operation of law.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

### 9.17.16.    Delivery of Distributions or Unclaimed Distributions

Except as otherwise provided in the Plan, Distributions to record holders of Allowed Claims shall be made by the Plan Agent (a) at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed or if the Liquidating Trustee has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related proof of Claim, (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address, or (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Agent, or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts in respect of undeliverable Distributions made by the Plan Agent or the indenture trustee, agent, or servicer, shall be returned to such party until such distributions are claimed.  All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the Effective Date, after which date all Unclaimed Property shall be free of any restrictions thereon, except as provided in the Plan, and the Claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary and all Unclaimed Property otherwise attributable to that Claim shall be held by the Liquidating Trust for re-distribution to other holders of Allowed Claims.  To the extent there remains, after Distributions by the Liquidating Trustee and the payment of all expenses of administration, property of *de minimis* value such that the expense of distributing such property would exceed the reasonable benefit to the recipients, the Liquidating Trustee shall distribute such property as set forth in the Liquidating Trust Agreement.

### 9.17.17.    Withholding and Reporting Requirements

In connection with the Plan, to the extent applicable, the Reorganized Debtor or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and any distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor or the Liquidating Trustee (or their authorized representative) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan hereby preserves the right of the Debtor and the Liquidating Trustee, as applicable, to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens and encumbrances.

### 9.17.18.    Setoffs and Recoupment

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Liquidating Trustee may setoff and/or recoup against any Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before such Distribution is made), any Claims, rights, and Causes of Action of any nature that the Reorganized Debtor or the Liquidating Trustee, as applicable, may hold against the holder of such Claim, to the extent such Claims, rights, or Causes of Action against such holder have not

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise). Nothing contained in the Plan shall limit or restrict or impair any rights of recoupment or setoff of the holders of Claims against the Debtor.

### 9.18.    Modifications or Withdrawal of the Plan

The Debtor may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date with the consent of Taberna and the Warm Jones Lenders.

After the Confirmation Date and prior to "substantial consummation" of the Plan, the Debtor, with the consent of the Taberna and the Warm Jones Lenders,  or the Liquidating Trustee, as applicable, may, institute proceedings under section 1127(b) of the Bankruptcy Code in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## 10.    CONFIRMATION OF THE PLAN

### 10.1.    Solicitation of Votes; Voting Procedures

As set forth in Article VI of the Plan, certain classes will be entitled to vote on the Plan. Other classes are either unimpaired or deemed to reject the Plan and, in either case, not entitled to vote.   The Debtor will propose certain solicitation and voting procedures pursuant to a separate motion to be filed with the Court. Such motion and proposed procedures will provide (a) the notice of, among other things, the time for submitting ballots to accept or reject the Plan, the date, time, and place of the hearing to consider Confirmation of the Plan and related matters, and the time for filing objections to Confirmation of the Plan, and, as applicable, (b) a ballot or ballots (and return envelope(s)) that may be used in voting to accept or to reject the Plan, or a notice of nonvoting status (the "Solicitation Package"). Only holders eligible to vote in favor of or against the Plan will receive ballot(s) as part of their Solicitation Package.

### 10.2.    Requirements for Confirmation of a Plan

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1.    The plan complies with the applicable provisions of the Bankruptcy Code.

2.    The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

3.    The plan has been proposed in good faith and not by any means forbidden by law.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

4. Any payment made or promised by the Debtor for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by or is subject to the approval of the Bankruptcy Court as reasonable.

5. (a)(i) The proponents of the plan have disclosed the identity and affiliations of any individual proposed to serve after confirmation of the plan as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to or continuance in such office of such individual is consistent with the interests of creditors and equity security holders and with public policy; and

(b) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the debtor and the nature of any compensation for such insider.

6. Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

7. With respect to each impaired class of claims or interests:

(a) each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor was liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or

(b) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8. With respect to each class of claims or interests:

(a) such class has accepted the plan; or

(b) such class is not impaired under the plan.

9. Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that: (a) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(b) with respect to a class of claims of a kind specified, each holder of a claim of such class will receive:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan, equal to the allowed amount of such claim; and

(c) with respect to a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding five years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

10. If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

11. Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

12. All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

13. All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation.

11 U.S.C. § 1129(a).

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all the requirements of chapter 11 as of the Effective Date, and that the Plan is proposed in good faith.

The Debtor believes that Holders of all Allowed Claims and Interests are Unimpaired, have accepted the plan or will receive payments under the Plan having a present value as of the Effective Date not less than the amounts likely to be received if the Debtor was liquidated in a case under chapter 7 of the Bankruptcy Code. In a chapter 7 liquidation, unsecured claimants would be unlikely to receive any distributions on account of their claims. This is because the value of the Debtor's assets are exceeded by the aggregate amount of liens against such assets. For this reason, the Distributions proposed under the Plan are in the best interest of creditors and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

provide a greater return than would be available if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor also believes that the feasibility requirement for confirmation of the Plan will be satisfied. The Liquidation Trust Assets will provide funds sufficient to satisfy the Debtor's obligations under the Plan. These facts and others in support of confirmation of the Plan will be provided at the Confirmation Hearing.

### 10.3.    Confirmation Without Acceptance of All Impaired Classes -- "Cramdown"

The Debtor may request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code, and it reserves the right to modify the Plan to the extent, if any, that confirmation in accordance with section 1129(b) of the Bankruptcy Code requires modification. Under section 1129(b) of the Bankruptcy Code, the Court may confirm a plan over the objection of a rejecting class, if, among other things, (a) at least one impaired Class of Claims has accepted the plan (not counting the votes of any "insiders" as defined in the Bankruptcy Code) and (b) if the plan "does not discriminate unfairly" against and is "fair and equitable" to each rejecting class.

A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a rejecting impaired class is treated equally with respect to other classes of equal rank. A plan is fair and equitable as to a class of secured claims that rejects the plan if, among other things, the plan provides (a) (i) that the holders of claims in the rejecting class retain the liens securing those claims (whether the property subject to those liens is retained by the debtor or transferred to another entity) to the extent of the allowed amount of such claims and (ii) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in such property; (b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (a) or (c) of this paragraph; or (c) for the realization by such holders of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan, if, among other things, the plan provides that (a) each holder of a claim in the rejecting class will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of the claim; or (b) no holder of a claim or interest that is junior to the claims of the rejecting class will receive or retain under the plan any property on account of such junior claim or interest. A plan is fair and equitable as to a class of interests that rejects the plan if the plan provides, among other things that (a) each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (b) that no holder of an interest that is junior to the interests of such class will receive or retain under the plan any property on account of such junior interest.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

35

102999-002/1320609_2

## 11.    RISK FACTORS

### 11.1.    Confirmation Risks

If the Plan is not confirmed and consummated, there can be no assurance that the Chapter 11 Case will continue rather than be converted to a chapter 7 liquidation. The Debtor believes that absent confirmation of the Plan, the likely result will be a forced sale of the Debtor's assets with the reduction in proceeds available to be distributed due to the fact forced sale values will be substantially less than a fair market sale. Any objection to confirmation of the Plan filed by a party in interest might prevent confirmation of the Plan or delay confirmation for a significant period of time. Under the circumstances, the Debtor will be unable to obtain financing elsewhere, and the Debtor may be forced to liquidate under chapter 7 of the Bankruptcy Code. Further, if the Court determines that the Plan does not satisfy confirmation requirements, the Plan may not be confirmed.

### 11.2.    Conditions Precedent

The conditions set forth under Section 13.1 (Conditions to Confirmation) and the Conditions to the Effective Date (under Article 13.2 of the Plan, may be waived (except with respect to conditions required under the Bankruptcy Code and those set forth in Article 13.5) in whole or in part by the Debtor, without any notice to parties in interest or the Bankruptcy Court and without a hearing; provided, however, that such waiver will not be effective without the consent of Taberna and the Warm Jones Lenders.

## 12.    LIQUIDATION ALTERNATIVE TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor analyzed whether a chapter 7 liquidation of its assets would be in the best interest of holders of claims and interests. The nature of the debtor's assets are such that a chapter 7 liquidation and forced sale of the assets will significantly impair the recovery to creditors.

Debtor in the course of the chapter 11 case has attempted to liquidate the notes held by it. The Debtor has received an offer for the purchase of the Sedora note for $1,700,000, which represents an approximately sixty percent discount off of the face amount of the note. The note is current and the Debtor has determined that accepting a discounted purchase price for the note at this time is not in the best interests of the Estate.

The bulk of the Debtor's assets are comprised of interests in LLCs, which in turn own primarily raw undeveloped land. It is the belief of the Debtor at this time that holding the properties for some period of time to allow the real estate market to recover may result in an increase in the value of those assets. The Debtor anticipates that the liquidating trust will also allow for some "owner financing" for the assets or other alternative disposition methods that would be foreclosed by a straight liquidation. It is believed that the potential buyers for the Debtor's assets will not be able to obtain the requisite financing to acquire any assets of the Debtor and the ability to provide alternative forms of asset financing will increase the pool of potential buyers and thus the value of the assets.

For the above reasons, the Debtor believes that the consummation of the proposed Plan is in the best interest of Creditors, as it produces a better return for such Creditors than a chapter 7 liquidation. See **Exhibit "2"** for a comparison of the potential anticipated recovery for Creditors under the Debtor's Plan and the recovery Creditors could expect if the Debtor's assets were liquidated through a chapter 7 process.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

### 13.    FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

#### 13.1.    Statutory Overview

Below is a discussion of the potential material federal income tax consequences of the plan to the Debtor, Reorganized Debtor, and of hypothetical holders of claims or interests. The discussion is intended to provide information sufficient to enable such a hypothetical investor to make an informed judgment about the Plan, as contemplated in 11 U.S.C. § 1125(a)(1). The federal income tax consequences discussed herein are those arising under the Internal Revenue Code of 1986 as amended (the "Tax Code"), the Treasury Regulations (the "Regulations") promulgated thereunder, and applicable case law, revenue rulings, revenue procedures and other authority interpreting the relevant sections of the Tax Code and the Regulations.

This summary does not, nor is it intended to, address applicable foreign, state or local tax law, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as taxpayers who are not United States domestic corporations or citizens or residents of the United States, S corporations, banks, mutual funds, insurance companies, financial institutions, regulated investment companies, broker-dealers, non-profit entities or foundations, small business investment companies, persons that hold Claims or Equity Interests as part of a straddle or conversion transaction and tax-exempt organizations).

No administrative rulings will be sought from the Internal Revenue Service (the "IRS") with respect to any of the federal income tax aspects of the Plan. Consequently, there can be no assurance that the treatment described in this Disclosure Statement will be accepted by the IRS. No opinion of counsel has either been sought or obtained with respect to the federal income tax aspects of the Plan.

THE DISCUSSION SET FORTH IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR GENERAL INFORMATION ONLY. ALL CREDITORS AND EQUITY HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE FEDERAL INCOME TAX CONSEQUENCES CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN, AS WELL AS STATE AND LOCAL TAX CONSEQUENCES AND FEDERAL ESTATE AND GIFT TAXES.

#### 13.2.    Tax Consequences to the Debtor

##### 13.2.1. Net Operating Loss Carry Forwards

The amount of the Debtor's net operating loss carryforwards ("NOLs") for federal income tax purposes, and possibly certain other tax attributes, may be significantly reduced upon implementation of the Plan. In addition, the Reorganized Debtor's and the Liquidation Trust's subsequent utilization of any net built-in losses with respect to their assets and NOLs remaining, and possibly certain other tax attributes, may be restricted as a result of and upon the implementation of the Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

### 13.2.2. Cancellation of Indebtedness Income.

Under the Tax Code, a taxpayer generally must recognize income from the cancellation of debt ("COD Income") to the extent that its indebtedness is discharged during the taxable year. Section 108(a)(1)(A) of the Tax Code provides an exception to this rule, however, where a taxpayer is in bankruptcy and where the discharge is granted by, or is effected pursuant to a plan approved by, the bankruptcy court.  In this case, instead of recognizing income, the taxpayer is required, under section 108(b) of the Tax Code, to reduce certain of its tax attributes by the amount of COD Income. The attributes of the taxpayer are to be reduced in the following order: NOLs, general business and minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets, and finally, foreign tax credit carryforwards (collectively, "Tax Attributes").  Section 108(b)(5) of the Tax Code permits a taxpayer to elect to first apply the reduction to the basis of the taxpayer's depreciable assets, with any remaining balance applied to the other Tax Attributes in the order stated above.  In addition to the foregoing, section 108(e)(2) of the Tax Code provides a further exception to the realization of COD Income upon the discharge of debt, providing that a taxpayer will not recognize COD Income to the extent that the taxpayer's satisfaction of the debt would have given rise to a deduction for federal income tax purposes.

As a result of having its debt reduced in connection with its bankruptcy, the Debtor generally will not recognize COD Income from the discharge of indebtedness pursuant to the Plan; however, certain Tax Attributes of the Debtor will be reduced or eliminated.  The Debtor does not currently anticipate that it will make the election under 108(b)(5) of the Tax Code to apply any required attribute reduction first to the basis of the Debtor's depreciable property.  Only to the extent that the discharge is of amounts that the Debtor would have been entitled to deduct if the Debtor had paid such amounts, will the Debtor avoid recognition of COD Income and reduction of Tax Attributes pursuant to section 108(e)(2) of the Tax Code.

### 13.3.    Tax Consequences to Holders of Claims

A creditor who receives cash or other consideration in satisfaction of any Claim may recognize ordinary income.  The impact of such ordinary income, as well as the tax year for which the income shall be recognized, shall depend upon the individual circumstances of each claimant, including the nature and manner of organization of the claimant, the applicable tax bracket for the claimant, and the taxable year of the claimant.  Each creditor is urged to consult with its tax advisor regarding the tax implications of any payments or distributions under the Plan.

In general, the principal federal income tax consequents of the Plan to holders of Claims will be (a) recognition of loss or a bad debt deduction to the extent that the total payments received under the Plan with respect to the Claim are less than the adjusted basis of the holder in such Claim, or (b) recognition of taxable income by the holder of the Claim to the extent of the excess of the amount of any payments made under the Plan in respect of the Claim over the holder's adjusted basis therein.

The amount and character of any resulting income or loss recognized for federal income tax consequences to a holder of any Claim as a result of implementation of the Plan will, however, depend on may factors.  The most significant of these factors include (a) the nature and origin of the Claim, (b) whether the holder is a corporation (c) the extent to which the Plan provides for payment of the particular Claim, (d) the extent to which any payment made is

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

allocable to pre-petition interest which is part of such Claim, and (e) the prior tax reporting positions taken by the holder with respect to the item that constitutes the Claim. As to the last factor, relevant tax reporting positions include whether the holder had to report under its method of accounting any portion of the Claim (including accrued and unpaid interest) as income prior to receipt and whether the holder previously claimed a bad debt or worthlessness deduction with respect to the Claim, which would affect the adjusted basis of the holder in the Claim.

General rules for the deduction of bad debts are provided in section 166 of the Tax Code as follows:

If either (a) the creditor is a corporation, or (b) the debt is a business bad debt in the hands of the creditor, and the creditor demonstrates that the debt is collectable only in part, a deduction for partial worthlessness of the debt will be allowed to the extent that the debt is charged off in the accounting records of the creditor.

For a creditor not described in the previous paragraph, a bad debt deduction is allowable only in the year that the debt becomes wholly worthless.

If a creditor is not a corporation and the debt is a nonbusiness bad debt, the bad debt deduction is treated as a short-term capital loss, which can offset only capital gain income and a limited amount of ordinary income.

For purposes of section 166 of the Tax Code, a "nonbusiness debt" means a debt other than (i) a debt created or acquired in connection with the creditor's trade or business, or (ii) a debt the loss from the worthlessness of which was incurred during the operation of the creditor's trade or business.

The time that a debt becomes worthless (or partially worthless), and therefore the tax year in which a creditor may claim a bad debt deduction, is a question of fact. Pursuant to Treasury Regulation section 1.166-2(c), as a general rule, bankruptcy is an indication of the worthlessness of at least a part of an unsecured, non-priority debt. In bankruptcy cases, a debt may become worthless before settlement in some instances, and only when a settlement in bankruptcy has been reached in other instances. The mere fact that bankruptcy proceedings instituted against the debtor are terminated in a later year, thereby confirming the conclusion that the debt is worthless (or partially worthless), does not necessarily shift the deduction to such later year. Thus, even though the precise amount that holders of General Unsecured Claims or other Claims will receive under the Plan may not be known until the final distribution date, the determination of the precise amount that will be paid under the Plan with respect to a Claim, or that no amount will be paid, does not necessarily establish that any resulting bad debt deduction is properly allowable in the Creditor's tax year in which the final distribution is made, rather than in an earlier year. Accordingly, to the extent that a Creditor may claim a bad debt deduction which it has not previously claimed, it is possible that the Creditor will be required to amend its return for a prior year and claim the deduction in that year, rather than in the year in which the final distribution is made. Creditors should consult with their individual tax advisors with respect to this issue.

The extent to which gain or loss may be recognized by a holder of a Claim upon implementation of the Plan may be significantly affected by any bad debt deduction that may

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

have been claimed by the holder in a prior year with respect to the debt on which the Claim is based. If the holder took a bad debt deduction in a prior year which is recovered in whole or part through a payment made to the holder pursuant to the Plan, the holder will generally be required to include in income the amount recovered in the year the holder receives the payment. An exception to this rule permits exclusion of a recovery of a prior bad debt deduction to the extent that the earlier bad debt deduction did not produce a tax benefit to the holder.

**14.    RECOMMENDATION AND CONCLUSION**

The Debtor urges all Holders of Claims and Interests to support approval of this Disclosure Statement and confirmation of the Plan.

DATED this ___9th___ day of September, 2011

GORDON SILVER

*Candace Clark*

GERALD M. GORDON, ESQ.
THOMAS H. FELL, ESQ.
CANDACE C. CLARK, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, NV 89169

DOUGLAS S. DRAPER, ESQ. (*Pro Hac Vice*)
WILLIAM H. PATRICK, III, ESQ. (*Pro Hac Vice*)
LESLIE A. COLLINS, ESQ.(*Pro Hac Vice*)
**Heller, Draper, Hayden, Patrick & Horn, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
*Attorneys for the Desert Capital REIT, Inc.*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1320609_2

40