1  GORDON SILVER
   GERALD M. GORDON, ESQ.
2  Nevada Bar No. 229
   E-mail: ggordon@gordonsilver.com
3  THOMAS H. FELL, ESQ.
   Nevada Bar No. 3717
4  E-mail: tfell@gordonsilver.com
5  CANDACE C. CLARK, ESQ.
   Nevada Bar No. 11539
6  E-mail: cclark@gordonsilver.com
   3960 Howard Hughes Pkwy., 9th Floor
7  Las Vegas, Nevada 89169
   Telephone (702) 796-5555
8  Facsimile (702) 369-2666

9
   HELLER, DRAPER, HAYDEN,
10   PATRICK & HORN, L.L.C.
   DOUGLAS S. DRAPER, ESQ. (Admitted Pro Hac Vice)
11  Louisiana Bar No. 5073
   E-mail: ddraper@hellerdraper.com
12  WILLIAM H. PATRICK, III, ESQ. (Admitted Pro Hac Vice)
   E-mail: wpatrick@hellerdraper.com
13  Louisiana Bar No. 10359
14  LESLIE A. COLLINS, ESQ. (Admitted Pro Hac Vice)
   E-mail: lcollins@hellerdraper.com
15  Louisiana Bar No. 14891
   650 Poydras St., Suite 2500
16  New Orleans, LA 70130
   Telephone (504) 581-9595
17  Facsimile (504) 299-3300
18  Attorneys for Desert Capital REIT, INC.

19

20

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

21  In re:                           Case No.: 11-16624-LBR
                                     Chapter 11
22  DESERT CAPITAL REIT, INC.

23         Debtor.

24  _____

25  **PLAN OF REORGANIZATION OF DESERT CAPITAL REIT, INC.**

26  **AS OF SEPTEMBER 2, 2011**

27

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

# TABLE OF CONTENTS

1.    INTRODUCTION ............................................................................................. 1

2.    DEFINED TERMS ............................................................................................ 1

    **2.1.**    "510(b) Subordinated Claim" ................................................... 1
    **2.2.**    "Administrative Claim" ............................................................. 1
    **2.3.**    "Administrative Claims Bar Date" ........................................... 1
    **2.4.**    "Administrative Tax Claim" ...................................................... 1
    **2.5.**    "Affiliates" ................................................................................ 2
    **2.6.**    "Allowed Claim" ....................................................................... 2
    **2.7.**    "Allowed Class … Claim" ........................................................ 2
    **2.8.**    "Allowed Interest" .................................................................... 2
    **2.9.**    "APA" ........................................................................................ 2
    **2.10.**    "Assets" ..................................................................................... 2
    **2.11.**    "Available Cash" ....................................................................... 2
    **2.12.**    "Avoidance Actions" ................................................................. 2
    **2.13.**    "Balloting Agent" ..................................................................... 2
    **2.14.**    "Bankruptcy Code" ................................................................... 3
    **2.15.**    "Bankruptcy Court" .................................................................. 3
    **2.16.**    "Bankruptcy Rules" .................................................................. 3
    **2.17.**    "Bar Date" ................................................................................. 3
    **2.18.**    "Business Day" .......................................................................... 3
    **2.19.**    "Case" ........................................................................................ 3
    **2.20.**    "Cash" ........................................................................................ 3
    **2.21.**    "Causes of Action" ................................................................... 3
    **2.22.**    "Claim" ...................................................................................... 3
    **2.23.**    "Claims Objection Deadline" ................................................... 3
    **2.24.**    "Claims Register" ...................................................................... 3
    **2.25.**    "Class" ....................................................................................... 4
    **2.26.**    "Collateral" ............................................................................... 4
    **2.27.**    "Committee" .............................................................................. 4
    **2.28.**    "Confirmation Date" ................................................................. 4
    **2.29.**    "Confirmation Hearing" ............................................................ 4
    **2.30.**    "Confirmation Order" ............................................................... 4
    **2.31.**    "Contingent Claim" .................................................................. 4
    **2.32.**    "Creditor" .................................................................................. 4
    **2.33.**    "Cure Claim" ............................................................................. 4
    **2.34.**    "DCR" ........................................................................................ 4
    **2.35.**    "Debtor" ..................................................................................... 4
    **2.36.**    "Disallowed Claim" .................................................................. 4
    **2.37.**    "Disclosure Statement" ............................................................. 4
    **2.38.**    "Disclosure Statement Order" ................................................... 4
    **2.39.**    "Disputed Claim" or "Disputed Interest" ................................. 5
    **2.40.**    "Disputed Claim Reserve" ........................................................ 5
    **2.41.**    "Disputed Cure Reserve" .......................................................... 5
    **2.42.**    "Distribution" ............................................................................ 5
    **2.43.**    "Distribution Date" ................................................................... 5

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

2.44. "Distribution Record Date" ................................................................................ 5
2.45. "Effective Date" ................................................................................................. 5
2.46. "Estate" .............................................................................................................. 5
2.47. "Exhibit" ............................................................................................................ 5
2.48. "Final Order" ..................................................................................................... 5
2.49. "General Unsecured Claim" .............................................................................. 6
2.50. "Governmental Unit" ........................................................................................ 6
2.51. "Impaired" ......................................................................................................... 6
2.52. "Interest" ........................................................................................................... 6
2.53. "Interests Register" ........................................................................................... 6
2.54. "IRS" ................................................................................................................. 6
2.55. "Lien" ................................................................................................................ 6
2.56. "Liquidating Trust" ........................................................................................... 6
2.57. "Liquidating Trustee" ....................................................................................... 6
2.58. "Liquidating Trust Agreement" ........................................................................ 6
2.59. "Liquidating Trust Assets" ............................................................................... 6
2.60. "Liquidating Trust Board" ................................................................................ 7
2.61. "Other Secured Claim" ..................................................................................... 7
2.62. "Person" ............................................................................................................ 7
2.63. "Petition Date" .................................................................................................. 7
2.64. "Plan" ................................................................................................................ 7
2.65. "Plan Agent" ..................................................................................................... 7
2.66. "Plan Objection Deadline" ............................................................................... 7
2.67. "Plan Rate" ........................................................................................................ 7
2.68. "Plan Schedule" ................................................................................................ 7
2.69. "Plan Supplement" ............................................................................................ 7
2.70. "Priority Non-Tax Claim" ................................................................................ 7
2.71. "Priority Tax Claim" ........................................................................................ 7
2.72. "Professional" ................................................................................................... 7
2.73. "Professional Fee Claim" ................................................................................. 7
2.74. "Professional Fee Order" ................................................................................. 8
2.75. "Proof of Claim" ............................................................................................... 8
2.76. "Purchased Assets" ........................................................................................... 8
2.77. "Purchaser" ....................................................................................................... 8
2.78. "Ratable Portion" .............................................................................................. 8
2.79. "Reorganized Debtor" ...................................................................................... 8
2.80. "Retained Causes of Action" ........................................................................... 8
2.81. "Sale Order" ...................................................................................................... 8
2.82. "Scheduled" ...................................................................................................... 8
2.83. "Schedules" ....................................................................................................... 8
2.84. "Secured Claim" ............................................................................................... 8
2.85. "Secured Tax Claim" ........................................................................................ 8
2.86. "Securities Act" ................................................................................................ 8
2.87. "Senior Unsecured Claim" ............................................................................... 9
2.88. "Solicitation Order" .......................................................................................... 9
2.89. "Substantial Contribution Claim" .................................................................... 9
2.90. "Taberna" .......................................................................................................... 9
2.91. "Tax Reserve" ................................................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

| | | |
|---|---|---|
| **2.92.** | "TruPS" | 9 |
| **2.93.** | "TruPS Claims" | 9 |
| **2.94.** | "Trust Administrative Expenses" | 9 |
| **2.95.** | "Unclaimed Property" | 9 |
| **2.96.** | "Unimpaired" | 10 |
| **2.97.** | "Unsecured Claim" | 10 |
| **2.98.** | "U.S. Trustee" | 10 |
| **2.99.** | "Voting Deadline" | 10 |
| **2.100.** | "Voting Record Deadline" | 10 |
| **2.101.** | "Warm Jones Lenders" | 10 |

**3.** RULES OF INTERPRETATION AND COMPUTATION OF TIME ........... 10

**3.1.** Rules of Interpretation. ........... 10
**3.2.** Computation of Time. ........... 11

**4.** ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ........... 11

**4.1.** Administrative Claims. ........... 11
**4.2.** Priority Tax Claims. ........... 11

**5.** CLASSIFICATION OF CLAIMS AND INTERESTS AND IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED UNDER THIS PLAN ........... 11

**5.1.** Provisions For Treatment of Claims And Interests. ........... 12

5.1.1. Class 1 - Secured Tax Claims. ........... 12
5.1.2. Class 2 - Other Secured Claims. ........... 12
5.1.3. Class 3 - Priority Non-Tax Claims. ........... 13
5.1.4. Class 4 - Allowed Senior Unsecured Claims. ........... 13
5.1.5. Class 5 - Allowed General Unsecured Claims. ........... 13
5.1.6. Class 6 - Allowed 510(B) Subordinated Claims. ........... 13
5.1.7. Class 7 - Interests. ........... 14

**6.** ACCEPTANCE OR REJECTION OF PLAN ........... 14

**6.1.** Classes Entitled to Vote to Accept or Reject Plan. ........... 14
**6.2.** Special Provision Regarding Unimpaired Claims. ........... 14
**6.3.** Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code. ........... 14

**7.** MEANS FOR IMPLEMENTATION OF THIS PLAN ........... 14

**7.1.** Establishment of the Liquidating Trust and Appointment of Liquidating Trustee. ........... 14
**7.2.** Purpose of the Liquidating Trust. ........... 14
**7.3.** Appointment of the Liquidating Trust Board ........... 15
**7.4.** Appointment of the Liquidating Trustee. ........... 15
**7.5.** Resignation of the Liquidating Trustee. ........... 16
**7.6.** Resolution of Disputes Over Membership of Liquidating Trust Board. ........... 16
**7.7.** Treatment of Beneficial Interests in the Liquidating Trust. ........... 16
**7.8.** Actions against the Liquidating Trustee. ........... 16
**7.9.** Corporate Existence. ........... 17
**7.10.** Other General Corporate Matters. ........... 17

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

iii

102999-002/1277637_4

**7.11.** Interests in Debtor. .................................................................................. 17
**7.12.** Liquidating Trustee's Ability to Operate. ........................................... 17
**7.13.** Exemption from Certain Transfer Taxes. ............................................ 18
**7.14.** Preservation of Retained Causes of Action; Settlements. ................... 18
**7.15.** The Liquidating Trust Assets, including the Retained Causes of Action,
will be transferred to the Liquidating Trust on the Effective Date. ..... 18
**7.16.** Retention of Subsequent Causes of Action. ........................................ 19

8. TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED  LEASES AND
OTHER AGREEMENTS ................................................................................... 19

**8.1.** Assumption and Rejection of Executory Contracts and Unexpired Leases. ....... 19
**8.2.** Preexisting Obligations to the Debtor Under Executory Contracts and
Unexpired Leases. ............................................................................... 20
**8.3.** Contracts and Leases After Petition Date. .......................................... 20
**8.4.** Reservation of Rights. ......................................................................... 20
**8.5.** Additional Cure Provisions. ................................................................ 20
**8.6.** Disputed Cure Reserve. ....................................................................... 20
**8.7.** Claims Based on Rejection of Executory Contracts and Unexpired Leases. ...... 20
**8.8.** Indemnification and Corporation Contribution. ................................... 21

9. PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 21

**9.1.** Distributions for Claims Allowed as of Effective Date. ....................... 21
**9.2.** Record Date for Distributions to Holders of Claims. ........................... 22
**9.3.** Distributions of Cash by the Liquidating Trustee. ............................... 22
**9.4.** Delivery of Distributions. .................................................................... 22
**9.5.** Claims Payable by Insurance and Reservation of Rights under Insurance
Policies. ............................................................................................... 23
**9.6.** Withholding and Reporting Requirements. .......................................... 23

10. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
UNLIQUIDATED CLAIMS ............................................................................. 23

**10.1.** Expunging of Certain Claims. ............................................................. 23
**10.2.** Objections to Claims. ........................................................................... 23
**10.3.** Estimation of Claims. ........................................................................... 24
**10.4.** Distributions Pending Allowance of Disputed Claim. .......................... 24
**10.5.** Disputed Claim Reserves. .................................................................... 24
**10.6.** No Bond Pending Appeal. .................................................................... 24
**10.7.** Late Filed Claims. ............................................................................... 24
**10.8.** Distributions After Allowance. ............................................................ 24

11. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ....... 25

**11.1.** Professional Fee Claims. ...................................................................... 25
**11.2.** Administrative Claims. ......................................................................... 25
**11.3.** Administrative Ordinary Course Liabilities. ........................................ 25
**11.4.** Administrative Tax Claims. .................................................................. 26

12. LIQUIDATING TRUST AND LIQUIDATING TRUSTEE ............................. 26

**12.1.** Powers of the Liquidating Trustee ....................................................... 26

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

iv

102999-002/1277637_4

**12.2.** Payment of Expenses Incurred by the Liquidating Trust......................................28
**12.3.** Exculpation and Indemnification.................................................................................28
**12.4.** Retention of Funds Prior to Distribution.................................................................28
**12.5.** Conflict Between Plan and Liquidating Trust Agreement...............................29
**12.6.** Representation of Liquidating Trust. .........................................................................29
**12.7.** Termination of the Liquidating Trust. .......................................................................29

13. CONFIRMATION AND CONSUMMATION OF THIS PLAN...................................29

**13.1.** Conditions Precedent to Confirmation.....................................................................29
**13.2.** Occurrence of the Effective Date...............................................................................30
**13.3.** Notice of Effective Date. ...............................................................................................30
**13.4.** Substantial Consummation. ..........................................................................................31
**13.5.** Waiver of Conditions. .....................................................................................................31
**13.6.** Revocation, Withdrawal, Non-Consummation. ....................................................31

14. EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS ........................................31

**14.1.** Compromise and Settlement. ......................................................................................31
**14.2.** Binding Effect of Plan. ...................................................................................................31
**14.3.** Exculpation and Limitation of Liability. ...................................................................32
**14.4.** Plan Injunction. .................................................................................................................32
**14.5.** Officers and Directors Liability Insurance. .............................................................33
**14.6.** Setoffs and Recoupment. ..............................................................................................33
**14.7.** Release of Liens. ...............................................................................................................33
**14.8.** Satisfaction of Subordination Rights. .......................................................................34
**14.9.** Rights of Defendants in Avoidance Actions..........................................................34

15. RETENTION OF JURISDICTION ...................................................................................34

16. MISCELLANEOUS PROVISIONS....................................................................................35

**16.1.** Amendments and Modifications. ................................................................................35
**16.2.** Payment of Statutory Fees. ..........................................................................................36
**16.3.** Term of Injunctions or Stay. ........................................................................................36
**16.4.** Dissolution of Committees. ..........................................................................................36
**16.5.** No Admissions. .................................................................................................................36
**16.6.** Governing Law. .................................................................................................................36
**16.7.** Subordination. ...................................................................................................................36
**16.8.** Plan Supplements.............................................................................................................36
**16.9.** Notices. ................................................................................................................................37
**16.10.** Severability of Plan Provisions. ...................................................................................37
**16.11.** U.S. Trustee Quarterly Reports....................................................................................37
**16.12.** Default under this Plan....................................................................................................37

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

v

# 1.    INTRODUCTION

Desert Capital REIT, Inc. ("DCR" or the "Debtor"), as Debtor and Debtor-in-Possession in the above-captioned Case pending before the Bankruptcy Court, hereby proposes this *Plan of Reorganization of the Desert Capital REIT, Inc.* (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtor.).[1]  All Creditors, Interest holders (as these terms are defined herein) and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtor's history, assets, and historical financial data, and for a summary and analysis of this Plan and certain related matters.

All holders of Claims against and Interests in Debtor are encouraged to read this Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Section 12 to this Plan, Debtor expressly reserves the right to alter, amend, strike, withdraw or modify this Plan one or more times before the Effective Date.

# 2.    DEFINED TERMS

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**2.1.**    "510(b) Subordinated Claim" means a Claim that arises  from the rescission of a purchase or sale of the securities  of DCR or for damages arising from the purchase or sale of the Interests of DCR, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

**2.2.**    "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, without limitation, any (a) actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Professional Fee Claims, and (c) fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code.

**2.3.**    "Administrative Claims Bar Date" means except as modified by Section 11.2 of this Plan, the deadline for filing motions seeking payment of Administrative Claims which shall be thirty (30) days after the occurrence of the Effective Date.

**2.4.**    "Administrative Tax Claim" means an Unsecured Claim asserted by a Governmental Unit for taxes (and for any interest, penalties or other charges related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

---

[1] Capitalized terms used herein shall have the meanings ascribed to such terms in Section 2 of this Plan.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

1

**2.5.**    "Affiliates" has the meaning given such term by section 101(2) of the Bankruptcy Code.

**2.6.**     "Allowed Claim" means a Claim, or any portion thereof, that either:

a.    if no Proof of Claim has been timely filed on or before the Bar Date, (i) has been scheduled by the Debtor in a liquidated amount, <u>and</u> (ii) such Claim is not disputed or contingent, <u>and</u> (iii) no objection has been filed to the Claim by an Interested Party within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, <u>and</u> (iv) which Claim has not been disallowed under section 502(d) or (e) of the Bankruptcy Code; or

b.    if a Proof of Claim has been timely filed on or before the Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to a Final Order, the amount of the Claim (i) as to which any Interested Party has not filed an objection within the time required under this Plan, or otherwise fixed by the Bankruptcy Court, <u>and</u> (ii) that has not been disallowed under section 502(d) or (e) of the Bankruptcy Code; or

c.    has been allowed by a Final Order of the Bankruptcy Court; or

d.    is expressly allowed in a liquidated amount in this Plan.

**2.7.**    "Allowed Class ... Claim" means an Allowed Claim in the particular Class described.

**2.8.**    "Allowed Interest" means with respect to any Interest, an Interest held by a party who was listed as a stockholder of record of DCR on the Distribution Record Date or as allowed by Final Order of the Bankruptcy Court.

**2.9.**    "APA" means any Asset Purchase Agreement by and between the Debtor and any purchaser of Assets of the Debtor.

**2.10.**    "Assets" means all assets of the Estate as of the Effective Date including "property of the estate" as described in section 541 of the Bankruptcy Code and Causes of Action.

**2.11.**    "Available Cash" means all Cash held by the Debtor or Liquidating Trustee, as the case may be, less (i) any Cash held in Reserves; (ii) Cash used to pay Claims in Classes 1 through 7; and (iii) Cash used to pay fees and expenses incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

**2.12.**    "Avoidance Actions" means all Causes of Action arising under chapter 5 of the Bankruptcy Code, including under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or arising under similar state or federal statutes and common law, including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, or similar state laws, whether or not litigation is commenced to prosecute such Causes of Action.

**2.13.**    "Balloting Agent" means Greta Brouphy of Heller Draper Patrick & Horn LLC, who shall receive and tabulate ballots and report the results of the votes on this Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

2

**2.14.** "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*, as now in effect or as may be amended from time to time.

**2.15.** "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Case and, to the extent of the withdrawal of any reference under Section 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to Section 151 of title 28 of the United States Code, the United States District Court for the District of Nevada.

**2.16.** "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the general, local and chamber rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Case.

**2.17.** "Bar Date" means the date or dates established by this Plan, order of the Bankruptcy Court or the Bankruptcy Code or Bankruptcy Rules for the filing of Proofs of Claim by any Creditors or parties-in-interest.

**2.18.** "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**2.19.** "Case" means the  Chapter 11 bankruptcy case styled *In re Desert Capital REIT Inc.*, pending in the Bankruptcy Court as  Case No. 11-16624.

**2.20.** "Cash" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**2.21.** "Causes of Action" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, rights of indemnification or contribution, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, of the Debtor, including Avoidance Actions, and such other actions as may be listed on Plan Schedule I  unless otherwise specifically waived in writing by the Debtor or the Reorganized Debtor.

**2.22.** "Claim" means a claim, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**2.23.** "Claims Objection Deadline" means as applicable (except for Administrative Claims) (a) the day that is the later of (i) the first Business Day that is ninety (90) days after the Effective Date, and (ii) as to Proofs of Claim filed after the Bar Date (excluding Claims that are expressly permitted herein to be filed after the Confirmation Date), the first Business Day that is ninety (90) days after a Final Order is entered deeming the late-filed claim to be treated as timely filed, or (b) such later date as may be established by the Bankruptcy Court as may be requested on an *ex parte* basis and without notice by the Debtor or the Liquidating Trustee.

**2.24.** "Claims Register" means the list of Claims maintained by the Clerk of Court pursuant to applicable Bankruptcy Rules.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**2.25.**  "Class" means a category of holders of Claims or Interests as described in Section 5 of this Plan.

**2.26.**  "Collateral" means any property or interest in property of the Estate that is subject to a valid and enforceable Lien or security interest to secure a Secured Claim.

**2.27.**  "Committee" means any official committee appointed pursuant to section 1102(a) of the Bankruptcy Code in the Case.

**2.28.**  "Confirmation Date" means the date the Bankruptcy Court enters the Confirmation Order on the docket of the Case.

**2.29.**  "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan as such hearing may be adjourned or continued from time to time.

**2.30.**  "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**2.31.**  "Contingent Claim" means any Claim, the liability for which attaches as is dependent on the occurrence or happening of, or triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date which such Claim is estimated or an objection to such Claim is filed.

**2.32.**  "Creditor" means a holder of an Allowed Claim.

**2.33.**  "Cure Claim" means a Claim for any amount required to be paid under section 365(b)(1)(A) or 365(b)(1)(B) of the Bankruptcy Code as a result of the assumption of an executory contract or unexpired lease of the Debtor pursuant to a Final Order or the Plan.

**2.34.**  "DCR" means Desert Capital REIT, Inc., a Maryland corporation.

**2.35.**  "Debtor" means DCR.

**2.36.**  "Disallowed Claim" means a Claim, or any portion thereof that, either (a) has been disallowed by a Final Order or pursuant to a settlement with the Debtor, or (b) (i) is scheduled by the Debtor at $0.00 or as either contingent, disputed or unliquidated <u>and</u> (ii) for which no Proof of Claim has been timely filed on or before the established Bar Date or is deemed timely filed by Final Order of the Bankruptcy Court.

**2.37.**  "Disclosure Statement" means the written disclosure statement (including all schedules and attachments thereto and any documents delivered in connection therewith) relating to this Plan, approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented from time to time by any duly authorized amendment, modification, or supplement.

**2.38.**  "Disclosure Statement Order" means the order of the Bankruptcy Court, pursuant to section 1125 of the Bankruptcy Code, approving the Disclosure Statement.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

4

102999-002/1277637_4

**2.39.** "Disputed Claim" or "Disputed Interest" means a Claim or Interest or any portion thereof that is: (i) subject to timely objection interposed by a Debtor, the Reorganized Debtor, the Liquidating Trustee or any party-in-interest entitled to file and prosecute such objection in the Case, if at such time such objection has not been withdrawn or determined by Final Order; or (ii) a Claim that is listed by a Debtor as disputed, unliquidated or contingent in the Schedules; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code. The term "Disputed", when used to modify a reference in this Plan to any Claim or Interest (or Class of Claims or Interests), shall mean a Claim or Interest (or any Claim or Interest in such Class) that is a Disputed Claim or Disputed Interest. In the event there is a dispute as to classification or priority of a Claim or Interest, it shall be considered a Disputed Claim or Disputed Interest in its entirety. Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and distributions under this Plan.

**2.40.** "Disputed Claim Reserve" means a reserve of Cash created by the Liquidating Trustee for Distribution to holders of Disputed Claims to be reserved pending allowance of Disputed Claims in accordance with Section 10 of this Plan.

**2.41.** "Disputed Cure Reserve" means a reserve of Cash for Distribution to parties whose Cure Claim is disputed, to be reserved pending a determination of the proper amount of the Cure Claim in accordance with Section 10 of this Plan.

**2.42.** "Distribution" means any transfer under this Plan of Cash or other property of the Debtor to any Person in exchange for and satisfaction of Allowed Claims or in exchange for Allowed Interests.

**2.43.** "Distribution Date" means the date or dates, as determined by the Liquidating Trustee, upon which Distributions are made to holders of Allowed Claims or Allowed Interests entitled to receive Distributions under this Plan.

**2.44.** "Distribution Record Date" means the record date set for purposes of making Distributions under this Plan on account of Allowed Claims and Allowed Interests. The Distribution Record Date shall be the same date as the Voting Deadline.

**2.45.** "Effective Date" means the day as designated on the Notice of Effective Date filed in accordance with Section 13.3 of this Plan.

**2.46.** "Estate" means the bankruptcy estate of the Debtor as created under section 541 of the Bankruptcy Code.

**2.47.** "Exhibit" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**2.48.** "Final Order" means an order, decree or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, vacated, stayed, modified or amended, and as to which the time to appeal or seek review, reconsideration, or rehearing thereof has expired and as to which no appeal or petition for review or rehearing has been taken or is pending and that is otherwise final and non-appealable in accordance with the Bankruptcy Rule 8002.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**2.49.** "General Unsecured Claim" means a Claim, however arising, including from the rejection of an executory contract or an unexpired lease and any Unsecured Claim portion of an Allowed Other Secured Claim which is not subject to a timely election pursuant to section 1111(b) of the Bankruptcy Code, and which is not an Administrative Claim, Priority Tax Claim, Secured Tax Claim, Other Secured Claim, Priority Non-Tax Claim, Cure Claim, Senior Unsecured Claim, 510(b) Subordinated Claim, or an Interest.

**2.50.** "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

**2.51.** "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**2.52.** "Interest" means the rights of any holder or owner or former holder or owner (or their respective successors or assigns) of any shares of securities or any other equity securities (as defined in the Bankruptcy Code) of DCR issued, authorized and outstanding prior to the Petition Date. For the avoidance of doubt, TruPS shall not be considered "Interests" in the Debtor.

**2.53.** "Interests Register" means the list of the holders of Interests on the Distribution Record Date prepared by Debtor's transfer agent charged with maintaining the official registry of holders of such Interests which the Reorganized Debtor shall use as the official register of holders of Interests for purposes of Distributions to holders of Interests pursuant to this Plan.

**2.54.** "IRS" means the Internal Revenue Service of the United States of America.

**2.55.** "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code and, with respect to any Asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such Asset.

**2.56.** "Liquidating Trust" means that certain trust created in the manner described in this Plan and the Liquidating Trust Agreement to be administered by the Liquidating Trustee as set forth in Section 12 of this Plan that shall be named the "DCR Liquidating Trust."

**2.57.** "Liquidating Trustee" means the trustee of the Liquidating Trust created pursuant to this Plan and any successor thereto.

**2.58.** "Liquidating Trust Agreement" means that certain Liquidating Trust Agreement that is to govern the Liquidating Trust, which shall be form and substance reasonably acceptable to Taberna, the Debtor and the Warm Jones Lenders and which shall be  included in the Plan Supplement as the same may be amended, modified, or supplemented from time to time in accordance therewith

**2.59.** "Liquidating Trust Assets" means the Assets of the Estate that are in existence on the Effective Date and all other assets or properties created or acquired on or after the Effective Date, including without limitation (i) the Retained Causes of Action, (ii) Cash remaining on the Effective Date, (iii) all equity interests of the Debtor in any Affiliates or other entities and (iv) the proceeds of each of the foregoing, including, without limitation, any interest earned thereon.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**2.60.** "Liquidating Trust Board" means the board established pursuant to the Liquidating Trust Agreement and this Plan.

**2.61.** "Other Secured Claim" means any Secured Claim that is not a Secured Tax Claim and is not otherwise classified under this Plan.

**2.62.** "Person" means a natural person, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other Person.

**2.63.** "Petition Date" means April 29, 2011.

**2.64.** "Plan" means this  plan of reorganization for the Debtor under chapter 11 of the Bankruptcy Code as herein proposed, including all supplements, appendices and schedules hereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code and this Plan.

**2.65.** "Plan Agent" means the Liquidating Trustee.

**2.66.** "Plan Objection Deadline" means the deadline set by the Bankruptcy Court for filing objections to confirmation of this Plan.

**2.67.** "Plan Rate" means a simple interest rate of 4% per annum.

**2.68.** "Plan Schedule" means a schedule annexed either to this Plan or as an appendix to the Disclosure Statement, as the same may be altered, amended, supplemented, or modified from time to time.

**2.69.** "Plan Supplement" means the supplement(s) to this Plan filed in connection with this Plan prior to the Confirmation Hearing.

**2.70.** "Priority Non-Tax Claim" means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**2.71.** "Priority Tax Claim" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**2.72.** "Professional" means any professional employed in the Case pursuant to section 327, 328 or 1103 of the Bankruptcy Code or for which compensation and reimbursement from the Estate has been allowed by the Bankruptcy Court pursuant to section 503 of the Bankruptcy Code.

**2.73.** "Professional Fee Claim" means a Claim under sections 327, 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional for professional services rendered or expenses incurred in the Case on or after the Petition Date and prior to the Effective Date.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

7

102999-002/1277637_4

**2.74.** "Professional Fee Order" means any order entered by the Bankruptcy Court authorizing the interim payment of Professional Fee Claims, as may be amended from time to time prior to the entry of the Confirmation Order.

**2.75.** "Proof of Claim" means any written statement filed under oath in the Case by the holder of claims, other than an Administrative Claim, which statement (i) conforms substantially to Official Form 10, (ii) states the amount and basis of such holder's Claim, and (iii) attaches or otherwise sufficiently identifies all documentation evidencing or otherwise supporting such Claim.

**2.76.** "Purchased Assets" shall have the meaning ascribed to it in any APA.

**2.77.** "Purchaser" means any purchaser under any APA.

**2.78.** "Ratable Portion" means a fraction with a numerator equal to the amount of an Allowed Class 4 Claim or an Allowed Class 5 Claim, as applicable, and a denominator equal to the aggregate amount of all Allowed Claims in Classes 4 and 5.

**2.79.** "Reorganized Debtor" means Desert Capital REIT, Inc. from and after the Effective Date after giving effect to this Plan.

**2.80.** "Retained Causes of Action" means all Causes of Action, including but not limited to Causes of Action listed on Plan Schedule I, which the Estate may hold against any Person, other than (i) any Causes of Action against any Person to the extent such Causes of Action are specifically released in this Plan, and (ii) any Causes of Action which constitute Purchased Assets pursuant to a Sale Order.

**2.81.** "Sale Order" means any order of the Bankruptcy Court approving the sale of Purchased Assets to any Purchaser under any APA.

**2.82.** "Scheduled" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

**2.83.** "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed in the Case, as such Schedules have been or may be further modified, amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or a Final Order of the Bankruptcy Court.

**2.84.** "Secured Claim" means a Claim that is secured by a security interest in or Lien upon property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as determined pursuant to section 506(a) of the Bankruptcy Code.

**2.85.** "Secured Tax Claim" means a Secured Claim arising before the Effective Date that is due and owing to a Governmental Unit on account of taxes.

**2.86.** "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

8

**2.87.**  "Senior Unsecured Claim" means an Unsecured Claim against the Debtor which the Bankruptcy Court has determined (i) to arise from money borrowed that is evidenced by bonds, debentures, notes or other similar instruments; (ii) that represents a reimbursement obligation with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of the Debtor; (iii) that represents the deferred purchase price of property or services (but excluding trade accounts payable or other accrued liabilities arising in the ordinary course of business); (iv) that represents a capital lease obligation; (v) is related to derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options and swaps and similar arrangements; and (vi) or is otherwise an obligation of the type referred to in the preceding clauses (i) through (v) of another Person and all dividends of another Person the payment of which, in either case, the Debtor has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise, provided, however, that Senior Unsecured Claims shall not be deemed to include any Unsecured Claim (and guarantees, if any, in respect of such Unsecured Claim) issued to any trust, partnership or other entity affiliated with the Debtor that was or is a financing vehicle of the Debtor in connection with the issuance by such financing entity of equity securities or other securities pursuant to an instrument that ranks *pari passu* with or junior in right of payment to the TruPS.

**2.88.**  "Solicitation Order" means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**2.89.**  "Substantial Contribution Claim" means a Claim under section 503(b)(3) or (4) of the Bankruptcy Code.

**2.90.**  "Taberna" means Taberna Preferred Funding VI, Ltd. and Taberna Preferred Funding VIII, Ltd., which together hold approximately $30 million in face amount of TruPS Claims.

**2.91.**  "Tax Reserve" means as applicable, one or more reserves of Cash for distribution to holders of Allowed Tax Claims to be reserved pending allowance of Disputed Claims in accordance with Section 10 of this Plan.

**2.92.**  "TruPS" means the Trust Preferred Securities that were issued by Desert Capital TRS Statutory Trust I and that are payable from the proceeds of the Junior Subordinated Note due 2036 in the original principal amount of $30,980,000 issued by the Debtor pursuant to a Junior Subordinated Indenture, dated as of June 16, 2006.

**2.93.**  "TruPS Claims" means General Unsecured Claims that arise from the Debtor's obligations under the TruPS.

**2.94.**  "Trust Administrative Expenses" means professional fees and expenses incurred by the Liquidating Trust in carrying out the purposes of the Trust in accordance with this Plan and the Liquidating Trust Agreement.

**2.95.**  "Unclaimed Property" means any funds or property distributed to Creditors of the Debtor (together with any interest earned thereon) which are unclaimed as of one hundred eighty (180) days after a Distribution. Unclaimed Property will include, without limitation, Cash, and any other property which is to be distributed pursuant to this Plan which has been returned as

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

9

102999-002/1277637_4

undeliverable without a proper forwarding address, or which was not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

**2.96.** "Unimpaired" means when used in reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**2.97.** "Unsecured Claim" means any Claim to the extent such Claim is not a Secured Claim.

**2.98.** "U.S. Trustee" means the Office of the United States Trustee, or a representative thereof.

**2.99.** "Voting Deadline" means the last day and time for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order or as otherwise established by order of the Bankruptcy Court.

**2.100.** "Voting Record Deadline" means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those holders of Claims or Interests against the Debtor entitled to vote on this Plan.

**2.101.** "Warm Jones Lenders" means The DeBellis Family Limited Partnership, Wells Fargo as Trustee of the Pete P. Kubena Trust, Laurence R. Meyerson, the R.L. Faiman 1995 Irrevocable Trust Dated 8/8/95, RLF Diversified General Partnership, the Russel E. Warthen Separate Property Trust, the Russel E. Warthen IRA, Dana Warthen Wainwright, the Judith G. Lally Trust, R. Mark Warthen, Shannon W. Samuels, Paige E. Warthen, Tara Warthen Madson, the John Merrill Warthen Family Trust, Rebecca Warthen, the Linda M. Tucker Trust, The Joseph A. Debellis, M.D. Chartered Profit Sharing Plan, the Amalgamated Financial Trust, and the Rich Family Survivor's Trust. Any provision in this Plan which requires the consent or approval of the Warm Jones Lenders shall mean the consent or approval of Mr. Craig Burr, Esq., the attorney for the Warm Jones Lenders.

## 3.    RULES OF INTERPRETATION AND COMPUTATION OF TIME

**3.1.**    Rules of Interpretation.  For purposes of this Plan: a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or contain substantially such terms and conditions; c) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan; d) unless otherwise specified, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; g) "after notice and a hearing," or a similar phrase has the meaning ascribed in section 102 of the Bankruptcy Code; h) "includes" and "including" are not limiting; i) "may not" is prohibitive, and not permissive; and j) "or" is not exclusive. All

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

10

102999-002/1277637_4

references to a person as a holder of a Claim or Interest includes such Person's successors, assigns, or participants.

**3.2.**    Computation of Time.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## 4.    ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**4.1.**    Administrative Claims.  Subject to the provisions of Section 11 of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, (ii) the date such Administrative Claim becomes an Allowed Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any Assumed Contract, the holder of each Administrative Claim shall receive in full satisfaction, release, settlement and discharge of, and in exchange for, such Allowed Claim:  (a) Cash equal to the unpaid portion of such Administrative Claim; or (b) such other less favorable treatment as agreed to in writing by the Debtor or the Liquidating Trustee and the holder of an Allowed Claim; provided, however, that holders of Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during this Case will be paid in the ordinary course of business in accordance with the terms and conditions of any written agreement relating thereto.

**4.2.**    Priority Tax Claims.  On, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor or the Liquidating Trustee, as the case may be, (i) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, or (ii) payment of such Allowed Priority Tax Claim over a period not to exceed five (5) years from the Petition Date with interest as provided in section 511 of the Bankruptcy Code, or (iii) such other less favorable treatment as agreed to in writing with the Debtor or the Liquidating Trustee and the holder of an Allowed Priority Tax Claim. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with such Allowed Priority Claim.

## 5.    CLASSIFICATION OF CLAIMS AND INTERESTS AND IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED UNDER THIS PLAN

Pursuant to section 1122 of the Bankruptcy Code, set forth below is this Plan's designation of classes of Claims against and Interests in the Debtor.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes as set forth below and the status of those Classes as impaired or unimpaired is also indicated below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Section 4 above.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and receiving Distributions pursuant to, this Plan to the extent such Claim or Interest is an Allowed Claim or an

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

11

102999-002/1277637_4

Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

| | |
|---|---|
| Class 1- Secured Tax Claims | (Unimpaired under this Plan. No solicitation required.) |
| Class 2- Other Secured Claims | (Impaired under this Plan- entitled to vote) |
| Class 3- Priority Non-Tax Claims | (Impaired under this Plan- entitled to vote) |
| Class 4- Senior Unsecured Claims | (Impaired under this Plan- entitled to vote) |
| Class 5- General Unsecured Claims | (Impaired under this Plan- entitled to vote) |
| Class 6- 510(b) Subordinated Claims | (Impaired under this Plan-not entitled to vote. Deemed to reject Plan) |
| Class 7- Interests | (Impaired under this Plan- not entitled to vote. Deemed to reject Plan) |

# ARTICLE I
## PROVISIONS FOR TREATMENT OF CLAIMS AND INTERESTS

**5.1.**    Provisions For Treatment of Claims And Interests.

**5.1.1.   Class 1 - Secured Tax Claims.**  Each holder of an Allowed Class 1 Secured Tax Claim will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Tax Claim, as will have been determined by the Debtor or the Liquidating Trustee, as applicable, either (i) on, or as soon as reasonably practicable after, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, Cash equal to the due and unpaid portion of such Allowed Secured Tax Claim, or (ii) such other less favorable treatment as agreed to in writing by the holder of the Class 1 Allowed Secured Tax Claim and the Debtor or the Liquidating Trustee, as applicable.  Each holder of an Allowed Secured Tax Claim shall retain the Liens securing such Allowed Secured Tax Claim until the Allowed Secured Tax claim is paid in full.

**5.1.2.   Class 2 - Other Secured Claims.**  Each holder of an Allowed Class 2 Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Claim, on, or as soon as reasonably practicable thereafter, the later of  the Effective Date or the date on which such Claim becomes an Allowed Claim, at the option of the Debtor or the Liquidating Trustee, as applicable, (i) turnover of the Collateral securing such Allowed Other Secured Claim, (ii) if the Other Secured Claim is a fully Secured Claim, (A) pre-petition interest due under applicable bankruptcy or non-bankruptcy law and claimed in a Proof of Claim by such Creditor (or in any amendment or supplement thereto permitted by the Bankruptcy Rules, order of the Bankruptcy Court or this Plan) to the extent approved by the Bankruptcy Code or as included in the Schedules by the Debtor, (B) post-petition interest at the contractual rate of interest and, if a contractual default rate is provided in the contract, at the contractual default rate of interest, or, in the absence of a contractual rate of interest, at the Plan Rate, and (C) reasonable attorney's fees and costs to the extent due under applicable bankruptcy or non-bankruptcy law, until such Allowed Other Secured Claim is paid in

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

full, (iii) if the Other Secured Claim is not a fully Secured Claim, subject to the holder of an Allowed Class 2 Other Secured Claim not timely electing the application of Section 1111(b) of the Bankruptcy Code, Cash in an amount equal to the outstanding principal amount of the Allowed Secured portion of such Other Secured Claim or (iv) such other less favorable treatment as agreed to in writing by the holder of an Allowed Other Secured Claim and the Debtor or the Liquidating Trustee not inconsistent with this section and the Bankruptcy Code.

**5.1.3.   Class 3 - Priority Non-Tax Claims.**  Each holder of an Allowed Class 3 Priority Non-Tax Claim will receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, a Distribution of Cash  equal to the due and unpaid portion of such Allowed Claim, plus (A) pre-petition interest due under applicable bankruptcy or non-bankruptcy law and claimed in a Proof of Claim by such Creditor (or in any amendment or supplement thereto permitted by the Bankruptcy Rules, order of the Bankruptcy Court or this Plan) to the extent approved by the Bankruptcy Code or as included in the Schedules by the Debtor, (B) post-petition interest at the contractual rate of interest and, if a contractual default rate is provided in the contract, at the contractual default rate of interest, or, in the absence of a contractual rate of interest, at the Plan Rate, and (C) reasonable attorney's fees and costs to the extent due under applicable bankruptcy or non-bankruptcy law, until such Allowed Claim is paid in full, or (ii) such other less favorable treatment as agreed to in writing by the holder of an Allowed Priority Non-Tax Claim and the Debtor or the Liquidating Trustee.

**5.1.4.   Class 4 - Allowed Senior Unsecured Claims.**  Class 4 is comprised of all Allowed Senior Unsecured Claims.  Each holder of an Allowed Senior Unsecured Claim will receive on account of its Allowed Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, its Ratable Portion of the beneficial interests in the Liquidating Trust, or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Liquidating Trustee and the holder of an Allowed Senior Unsecured Claim.

**5.1.5.   Class 5 - Allowed General Unsecured Claims.**  Class 5 is comprised of all Allowed General Unsecured Claims, including the Claims of Holders of TruPS.  Each holder of an Allowed General Unsecured Claim will receive on account of its Allowed Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim, either (i) on, or as soon as reasonably practicable thereafter, the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, its Ratable Portion of the beneficial interests in the Liquidating Trust, or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Liquidating Trustee and the holder of an Allowed General Unsecured Claim, provided that any Distributions to holders of TruPS Claims from the Liquidating Trust shall be distributed to holders of Senior Unsecured Claims until such Senior Unsecured Claims have been paid in full in accordance with the contractual subordination provisions in the documents under which the TruPS Claims arise.

**5.1.6.   Class 6 - Allowed 510(B) Subordinated Claims.**  Class 6 is comprised of all holders of 510(b) Subordinated Claims.   On the Effective Date all Allowed 510(b) Subordinated Claims shall have the same priority as a Class 7 Interest, shall be added to the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

Interests Register and shall be treated for purposes of Distributions under this Plan *pari passu* with Allowed Class 7 Interests.  Holders of 510(b) Subordinated Claims shall receive nothing under this Plan.

      **5.1.7.   Class 7 - Interests.**   Class 7 is comprised of all holders of Interests in DCR.  On the Effective Date all Interests shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Interests shall become null, void and of no force or effect, and all such shares shall immediately be de-listed from all exchanges and other trading facilities.  Holders of Class 7 Interests shall receive nothing under this Plan.

The payments, Distributions and other treatment afforded to holders of Allowed Claims and Interests under this Section 5 shall be the sole distributions to holders of such Allowed Claims or Interests Pursuant to this Plan and shall be in full, final settlement, satisfaction and release of such Allowed Claims and Interests.

## 6.    ACCEPTANCE OR REJECTION OF PLAN

      **6.1.**     Classes Entitled to Vote to Accept or Reject Plan.  The holders of Claims in Classes 2, 3, 4 and 5 are entitled to vote to accept or reject the Plan. Class 6 510(b) Subordinated Claims and Class 7 Interests will receive nothing under the Plan and those Classes are conclusively deemed to reject the Plan under section 1126(g) of the Bankruptcy Code.  Consequently, the Debtor will not solicit acceptances or rejections from the holders of 510(b) Subordinated Claims and the holders of Interests.

      **6.2.**     Special Provision Regarding Unimpaired Claims.  Except as otherwise provided in this Plan, nothing shall affect the Debtor's and the Liquidating Trustee's, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to set off Claims or exercise rights of recoupment against Unimpaired Claims.

      **6.3.**     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.  If any Class of Claims or Interests entitled to vote on this Plan does not vote to accept this Plan, the Debtor shall be permitted to (a) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (b) withdraw, amend or modify this Plan to the extent provided herein.

## 7.    MEANS FOR IMPLEMENTATION OF THIS PLAN

      **7.1.**     Establishment of the Liquidating Trust and Appointment of Liquidating Trustee. On or prior to the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and accept the Assets to be transferred to the Liquidating Trust and the Liquidating Trust will be deemed to be created and effective without any further action of the Debtor or any employees, officers, directors or stockholders of the Debtor. The Liquidating Trust Assets shall be transferred to and vest in the Liquidating Trust free and clear of all Liens, Claims and any other encumbrance, other than as specifically provided for in this Plan. The beneficiaries of the Liquidating Trust are the holders of Allowed Class 4 Claims and Allowed Class 5 Claims against the Debtor and shall be bound by the Liquidating Trust Agreement.

      **7.2.**     Purpose of the Liquidating Trust.  The Liquidating Trust shall exist after the Effective Date, with all the powers of a trust under applicable Delaware law.  The Liquidating

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

14

102999-002/1277637_4

Trust shall be established for the purpose of liquidating its assets and making post-Effective Date distributions under this Plan, with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall have the authority to execute and consummate such assignments, purchase agreements, bills of sale, operating agreements, conveyance documents and all other transaction documents, contracts, agreements, and instruments as are necessary to implement and consummate the transactions required under or in connection with this Plan, on or after the Effective Date.

On and after the Effective Date, the Liquidating Trust will own the Liquidating Trust Assets and shall act in its sole discretion as necessary to liquidate the Liquidating Trust Assets and to enhance or preserve the value of the Liquidating Trust Assets. The Liquidating Trustee shall succeed to all such powers as would have been applicable to the Debtor with respect to the Assets of the Debtor transferred to the Liquidating Trust, and the Liquidating Trustee shall be authorized to take all actions that the Liquidating Trustee determines is in the best interests of the beneficiaries of the Liquidating Trust.

**7.3.**    Appointment of the Liquidating Trust Board.

(i)    On the Effective Date, the Liquidating Trust Board shall be appointed in accordance with the terms of the Liquidating Trust Agreement.

(ii)    The Liquidating Trust Board shall consist of three members who are willing to serve, two of which shall be selected by Taberna and one of which shall be selected by the Warm Jones Lenders; provided, however, if any such member shall cease to serve in his/her capacity as a member of the Liquidating Trust Board, the Person originally selecting such Person for inclusion on the board shall be entitled to select a replacement for such Person. The composition of the Liquidating Trust Board after the Effective Date shall be governed by the Liquidating Trust Agreement.

(iii)    The fiduciary duties, as well as the privileges, immunities and protections, that apply to a statutory committee appointed in a case under the Bankruptcy Code shall apply to the Liquidating Trust Board after the Effective Date.  The duties and powers of the Liquidating Trust Board shall terminate upon the termination of the Liquidating Trust.

(iv)    The Liquidating Trust Board's role shall be to advise and consult with the Liquidating Trustee as more particularly set forth in the Liquidating Trust Agreement.  The Liquidating Trust Board shall have the rights and duties set forth in the Liquidating Trust Agreement.

(v)    The members of the Liquidating Trust Board shall serve, receive compensation, and will be reimbursed for their reasonable expenses from the Liquidating Trust in accordance with the Liquidating Trust Agreement.

(vi)    The Liquidating Trustee shall be required by the Liquidating Trust Agreement to consult with and report to the Liquidating Trust Board and the authority of the Liquidating Trust Board shall be as set forth in this Plan and the Liquidating Trust Agreement.

**7.4.**    Appointment of the Liquidating Trustee.  The initial Liquidating Trustee shall be David Bagley, subject to the later selection of a successor Liquidating Trustee by the Liquidating

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

15

102999-002/1277637_4

Trust Board pursuant to the provisions of the Liquidating Trust Agreement. The Liquidating Trustee shall commence serving as the Liquidating Trustee on the Effective Date; provided however, that the party appointed as Liquidating Trustee shall be permitted to act in accordance with the terms of the Liquidating Trust Agreement from the Confirmation Date through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Liquidating Trust Agreement and this Plan.

**7.5.**    Resignation of the Liquidating Trustee. The Liquidating Trustee may resign at any time by giving written notice to the Liquidating Trust Board and such resignation shall be effective upon the date provided in such notice (which effective date shall not be less than fifteen (15) Business Days following the date of delivery of such notice). In the case of the resignation of the Liquidating Trustee, a successor Liquidating Trustee shall thereafter be appointed by the Liquidating Trust Board in accordance with the terms of the Liquidating Trust Agreement, whereupon such resigning Liquidating Trustee shall, to the extent necessary, convey, transfer and set over to such successor Liquidating Trustee by appropriate instrument or instruments all of the Liquidating Trust Assets then not conveyed or otherwise disposed of and all other assets then in his possession in accordance with the Liquidating Trust Agreement. Without further act, deed or conveyance, a successor Liquidating Trustee shall be vested with all the rights, privileges, powers and duties of the Liquidating Trustee, including the authority to act as the Plan Agent, except that the successor Liquidating Trustee shall not be liable for the acts or omissions of his predecessor(s). Each succeeding Liquidating Trustee may in like manner resign and another may in like manner be appointed in his place.

**7.6.**    Resolution of Disputes Over Membership of Liquidating Trust Board. Any dispute regarding the rights of Taberna and the Warm Jones Lenders to appoint members of the Liquidating Trust Board in accordance with Section 7.4. of this Plan shall be heard and resolved by the Bankruptcy Court.

**7.7.**    Treatment of Beneficial Interests in the Liquidating Trust. The beneficial interests of the Liquidating Trust issued pursuant to this Plan shall be issued pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code. Any securities issued to or transferred by the Liquidating Trust shall be issued or transferred pursuant to the exemption from securities registration contained in section 1145 of the Bankruptcy Code and shall be exempt from taxes pursuant to section 1146(a) of the Bankruptcy Code.

**7.8.**    Actions against the Liquidating Trustee. Absent the express permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Liquidating Trustee in his or her official capacity, with respect to his or her status, duties, powers, acts or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee and the Liquidating Trust Board and their professionals shall be exculpated by the Estate and all holders of Claims or Interests from any and all claims or causes of action and assertions of liability arising out of their performance of the duties conferred upon them by this Plan, the Liquidating Trust Agreement, or any orders of the Bankruptcy Court, except to the extent an act constitutes bad faith, gross negligence, willful misconduct, or actual fraud. No holder of a Claim or Interest or representative thereof shall have or pursue any claim or cause of action against the Liquidating Trustee and the Liquidating Trust Board or their professionals for taking any action in accordance with this Plan, the Liquidating Trust Agreement, or to implement the provisions of

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

this Plan or any order of the Bankruptcy Court. Nothing in this provision shall be deemed to alter the provisions of the Liquidating Trust Agreement.

**7.9.** **Corporate Existence.** After the Effective Date, the Debtor shall continue to maintain its corporate existence as the Reorganized Debtor solely for the purpose of implementing this Plan and transferring all Assets to the Liquidating Trust. Thereafter, the Liquidating Trustee shall be authorized (but not obligated) to take all actions reasonably necessary to dissolve the Debtor and any subsidiaries under applicable laws, including without limitation under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; provided, however, that any such dissolution shall not result in the Liquidating Trust assuming any duties or liabilities not otherwise owed by the Liquidating Trust immediately before such event. The Liquidating Trustee shall have no liability for using his or her discretion to dissolve or not dissolve any of the Debtor or the subsidiaries.

**7.10.** **Other General Corporate Matters.** On the Effective Date, the Debtor, the Reorganized Debtor and the Liquidating Trustee may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary or appropriate to effectuate the transactions contemplated by this Plan, including: (1) the execution and delivery of appropriate agreements or other documents that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (3) the filing of appropriate certificates with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Debtor, Reorganized Debtor or the Liquidating Trustee determine are necessary or appropriate.

**7.11.** **Interests in Debtor.** On the Effective Date, all Interests in Debtor shall, without any further action, be cancelled, annulled and extinguished and any certificated or electronic shares representing such Interests shall become null, void and of no force or effect, except as otherwise set forth in this Plan and all such shares shall immediately be delisted from all exchanges and other trading facilities.

**7.12.** **Liquidating Trustee's Ability to Operate.** From and after the Effective Date, subject to the Liquidating Trust Agreement, the Liquidating Trustee may use, acquire and dispose of Liquidating Trust Assets and settle and compromise Claims without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order and the Liquidating Trust Agreement. Without limiting the generality of the foregoing, the Liquidating Trustee may, subject to the provisions of the Liquidating Trust Agreement, without application to or approval by the Bankruptcy Court, pay fees incurred after the Effective Date for professional fees and expenses reasonably and necessarily incurred in carrying out his duties. Specifically, the Liquidating Trustee will sell or liquidate all Liquidating Trust Assets that are vested in the Liquidating Trust and use the proceeds thereof to pay the costs and expenses of the wind down of the Debtor, including the present and estimated future expenses and costs of the Liquidating Trust, and the Liquidating Trustee, and to make distributions to holders of Allowed Claims as provided in this Plan.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**7.13.**    Exemption from Certain Transfer Taxes.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from or by the Reorganized Debtor or the Liquidating Trust or to any other Person pursuant to or in accordance with this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**7.14.**    Preservation of Retained Causes of Action; Settlements.    Except to the extent such Retained Causes of Action are otherwise expressly addressed dealt with in this Plan, or are expressly and specifically released in connection with this Plan, the Confirmation Order or any settlement agreement approved during the Case, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code: (1) any and all Retained Causes of Action, defenses, and counterclaims of, or accruing to, the Estate shall be retained by and vest in the Liquidating Trust whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Retained Causes of Action, defenses and counterclaims have been listed or referred to in this Plan, the Schedules, or any other document filed with the Bankruptcy Court, and (2) the Liquidating Trustee does not waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any Retained Cause of Action, defense, or counterclaim that constitutes property of the Estate:  (a) whether or not such Retained Cause of Action, defense, or counterclaim has been listed or referred to in this Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such Retained Cause of Action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a party in any litigation relating to such Retained Cause of Action, defense or counterclaim filed a Proof of Claim in the Case, filed a notice of appearance or any other pleading or notice in the Case, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principal of law or equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RETAINED CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RETAINED CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THIS PLAN, THE SCHEDULES, OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE DEBTOR OR THE LIQUIDATING TRUSTEE, TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RETAINED CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTOR OR THE LIQUIDATING TRUSTEE, AS APPLICABLE, HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.

**7.15.**    The Liquidating Trust Assets, including the Retained Causes of Action, will be transferred to the Liquidating Trust on the Effective Date. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee shall be substituted as the party in interest in all adversary proceedings pending on the Effective Date, will have standing, on and after the Effective Date of this Plan, to pursue the Retained Causes of Action and will be deemed appointed as the representative of the Estate for the purpose of enforcing, prosecuting, and

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

18

102999-002/1277637_4

settling the Retained Causes of Action. The Liquidating Trust expressly reserves the right to pursue or adopt any claim alleged in any lawsuit in which the Debtor is a party.

The Liquidating Trustee shall have the authority to pursue all Retained Causes of Action that are not resolved by the Debtor prior to the Effective Date.  Pursuit of a Retained Cause of Action may include, but not be limited to, service of a demand letter, settlement negotiation, pursuit of litigation, and any other means available to the Liquidating Trustee to obtain a resolution of such Retained Cause of Action.  In the event the Liquidating Trustee is not able to resolve any Retained Causes of Action, the Liquidating Trustee may pursue Retained Causes of Action by any means authorized under this Plan, Disclosure Statement, Liquidating Trust Agreement, and applicable law, including litigation in such forum as the Liquidating Trustee deems appropriate.  Resolution of the Retained Causes of Action by the Liquidating Trustee shall be in accordance with the requirements and procedures set forth in this Plan and Liquidating Trust Agreement.

In full and final settlement of any and all Claims or causes of action asserted against the Debtor in case styled *Second James, Inc., et al. v.Todd Parriott, et al*., Case No. A 540243, District Court, Clark County, State of Nevada (the "Ferrar Litigation") or otherwise arising out of the events and circumstances that are the subject of the Ferrar Litigation (whether or not asserted), the plaintiffs in the Ferrar Litigation may pursue any claims against the former officers and directors of the Debtor and any insurer thereof free of any stay or injunction arising as a result of the commencement of the Case, under this Plan or in the Confirmation Order. The plaintiffs in the Ferrar Litigation shall have no Claims against the Debtor, and the Confirmation Order shall constitute an order disallowing any Proof of Claim filed by such plaintiffs for any Claims.

**7.16.**    Retention of Subsequent Causes of Action.  Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop the Liquidating Trustee or his or her privies, as successors in interest to the Debtor and its privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its rights in connection with the Retained Causes of Action, irrespective of the Person, of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in this Case, the present litigation, and those which may be asserted in any subsequent litigation brought by any Person.  Moreover, the failure to commence any of the Retained Causes of Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel with respect to any Retained Cause of Action.

## 8.    TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND OTHER AGREEMENTS

**8.1.**    Assumption and Rejection of Executory Contracts and Unexpired Leases.  On the Effective Date, all of the Debtor's executory contracts and unexpired leases will be rejected by the Debtor unless such executory contract or unexpired lease:  (a) is expressly being assumed (or assumed and assigned) pursuant to this Plan and is identified on Plan Schedule II as an Assumed Contract pursuant to this Plan; (b) is the subject of a motion to assume pursuant to section 365(a) of the Bankruptcy Code filed on or before the Confirmation Hearing; or (c) has been previously assumed, assumed and assigned, or rejected.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**8.2.**    Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases. Rejection of any executory contract or unexpired lease pursuant to this Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor and the Liquidating Trustee expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide warranties or continued maintenance obligations on goods or services previously purchased by the Debtor from counterparties to rejected or repudiated executory contracts or unexpired leases to the extent so provided by applicable bankruptcy law.  Additionally, the Reorganized Debtor and the Liquidating Trustee, as may be applicable, reserve the right to collect any amounts owed to the Debtor under such executory contracts or unexpired leases to the extent so provided by applicable bankruptcy law.

**8.3.**    Contracts and Leases After Petition Date.  Executory contracts and leases with third parties entered into after the Petition Date by the Debtor, and any executory contracts and unexpired leases assumed by Debtor during the Case, if any, may be performed by the Reorganized Debtor or the Liquidating Trustee, as the case may be, in the ordinary course of business.

**8.4.**    Reservation of Rights.  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtor that any such contract or lease is, in fact, an executory contract or unexpired lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is executory or is expired as of the time of assumption or rejection, the Debtor or the Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**8.5.**    Additional Cure Provisions.  Except as otherwise provided under this Plan, any monetary amounts that must be paid as a "cure" requirement for assumption and/or assignment of any executory contract or unexpired lease by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code, (i) shall be effected or otherwise satisfied by prompt payment of such monetary amount in Cash as contemplated by section 365(b)(1)(A) of the Bankruptcy Code, or (ii) shall otherwise be satisfied through a written agreement between the parties.  If there is any dispute regarding (a) the timing of any payment required in order to meet the promptness requirements of  365(b)(1), (b) the nature, extent or amount of any cure requirement, (c) the Debtor's, the Liquidating Trustee's or any assignee's ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, the cure will occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute.

**8.6.**    Disputed Cure Reserve.  A Disputed Cure Reserve shall be established for the purpose of effectuating Distributions to parties whose Cure Claims are subject to dispute.  The Disputed Cure Reserve shall be equal to 100% of the (a) stated amount of the Disputed Claim or (b) such lesser estimated amount as approved in an order by the Bankruptcy Court.  The Reorganized Debtor or the Liquidating Trustee may request estimation for any Cure Claim.

**8.7.**    Claims Based on Rejection of Executory Contracts and Unexpired Leases.  Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim asserting Claims

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

20

arising from the rejection of the Debtor's executory contracts and unexpired leases pursuant to this Plan, or otherwise, must be filed no later than thirty (30) days after the later of (a) the Effective Date or (b) entry of an order of the Bankruptcy Court approving such rejection.

Any Proofs of Claim arising from the rejection of any of the Debtor's executory contracts or unexpired leases that are not timely filed in accordance with this Section shall (1) be disallowed automatically, (2) be forever barred from assertion, (3) not be enforceable against any of the Debtor, the Reorganized Debtor or the Liquidating Trust, (4) be deemed fully satisfied, released, discharged, and expunged, notwithstanding anything in the Schedules or in any Proof of Claim to the contrary.

Allowed Claims arising from the rejection of the Debtor's executory contracts and unexpired leases shall be classified as a General Unsecured Claims; provided, however, if the holder of an Allowed Secured Claim for rejection damages has an unavoidable security interest in any Collateral to secure the obligations under such rejected executory contract or lease, such Allowed Secured Claim for rejection damages shall be treated as an Allowed Other Secured Claim to the extent of the value of such holder's interest in the Collateral securing such Allowed Secured Claim, with the unsecured portion of any such Allowed Claim, if any, subject to a timely election pursuant to section 1111(b) of the Bankruptcy Code treated as an Allowed General Unsecured Claim.

Any Claim based upon the rejection of an unexpired lease of real property shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and shall be subject to mitigation of damages by the holder of such Claim. The Reorganized Debtor or the Liquidating Trustee may request estimation for any claim for damages for the rejection of an unexpired lease of real property and the Bankruptcy Court shall consider the likelihood and amount of mitigation in connection therewith.

Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

**8.8.**    Indemnification and Corporation Contribution.  Except as otherwise specifically provided in this Plan, all rights of any Person to indemnification from the Debtor or Reorganized Debtor, whether pursuant to applicable law, certificates of incorporation, articles of incorporation or bylaws (or similar documents), indemnification agreements, contribution agreements or other agreements regarding indemnity or similar protection to any Person that are in effect immediately prior to the occurrence of the Effective Date shall terminate on the Effective Date and shall, without further action, extinguish, discharge, and terminate any Claims or Proofs of Claim filed with respect to such indemnification; provided, however, that such extinguishment, discharge and termination is without prejudice to the rights of any Person under any prior or existing insurance policy, including, without limitation, any directors' and officers' liability insurance policies, for defense and indemnity from the Debtor, up to the amount of, and payable solely from, the proceeds of prior or existing insurance policies.

## 9.    PROVISIONS GOVERNING DISTRIBUTIONS

**9.1.**    Distributions for Claims Allowed as of Effective Date.  When and to the extent funds become available (and subject to establishing the reserves required herein, including a

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

reasonable reserve for the payment of present and estimated expenses of the Liquidating Trust), and except as otherwise provided in this Plan or as ordered by the Bankruptcy Court, the Liquidating Trustee, after the Effective Date, shall make an initial Distribution to holders of Claims that are Allowed Claims as of the Effective Date in the priorities established pursuant to this Plan.  Subsequent Distribution Date(s) shall be determined and Distributions made as set forth herein.

**9.2.**    Record Date for Distributions to Holders of Claims.  As of the close of business on the Distribution Record Date, the Claims Register will be closed.  Except as otherwise permitted by this Plan or by Final Order of the Bankruptcy Court, after the Distribution Record Date, there shall be no further additions to the Claims Register or changes in the holder of record of any Claim.  Except as to Claims filed or determined after the Confirmation Date that are permitted by this Plan, the Liquidating Trustee shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under this Plan with only those holders of record stated on the Claims Register as of the close of business on the Distribution Record Date for Distributions under this Plan.

**9.3.**    Distributions of Cash by the Liquidating Trustee.  All Claims that are to be paid under the Plan will be paid by the Liquidating Trustee solely out of the Liquidating Trust Assets. Payments of Cash made pursuant to this Plan shall be by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement between the parties, in a commercially reasonable manner as the payor determines in its sole discretion.

**9.4.**    Delivery of Distributions.   Except as otherwise provided in this Plan, Distributions to record holders of Allowed Claims shall be made by this Plan Agent (a) at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Liquidating Trustee has been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address, or (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Agent, or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Amounts in respect of undeliverable Distributions made by the Plan Agent shall be returned to such party until such distributions are claimed.  All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the Effective Date, after which date all Unclaimed Property shall be free of any restrictions thereon, except as provided in this Plan, and the Claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary and all Unclaimed Property otherwise attributable to that Claim shall be held by the Liquidating Trust for re-distribution to other holders of Allowed Claims.  To the extent there remains, after Distributions by the Liquidating Trustee and the payment of all expenses of administration, property of *de minimis* value such that the expense of distributing such property would exceed

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

the reasonable benefit to the recipients, the Liquidating Trustee shall distribute such property as set forth in the Liquidating Trust Agreement.

**9.5.** Claims Payable by Insurance and Reservation of Rights under Insurance Policies. Nothing contained in this Plan or Confirmation Order shall constitute a rejection of any contract for insurance (including by way of illustration, any policies providing for indemnity or insurance for any claims made against any present or former directors and/or officers of the Debtor) or a waiver, impairment, restriction or limitation of any rights of the Debtor, Reorganized Debtor or holders of Claims under or with respect to any insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver, impairment, restriction or limitation of any Retained Cause of Action of the Liquidating Trustee or of any claims of any Person, including holders of Claims, against insurers under any policies of insurance, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses. Nothing contained herein shall be construed to limit or restrict the assertion of Claims by claimants (i) against insurers under any policies of insurance or (ii) against the Debtor, subject to any reduction for payment of such insured Claims directly to the holder thereof by such insurer. The availability of insurance, including defenses to payment by the insurer, may be considered in connection with the establishment of any Disputed Claim Reserve.

**9.6.** Withholding and Reporting Requirements. In connection with this Plan, to the extent applicable, the Reorganized Debtor or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and any distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtor or the Liquidating Trustee (or their authorized representative) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. This Plan hereby preserves the right of the Debtor and the Liquidating Trustee, as applicable, to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens and encumbrances.

## 10. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

**10.1.** Expunging of Certain Claims. Subject to the provisions of Section 10.7 of this Plan, all Claims marked or otherwise designated as "contingent," "unliquidated" or "disputed" on the Schedules and for which no Proof of Claim has been timely filed shall be deemed Disallowed Claims and such Claims shall be expunged as of the Confirmation Date without the necessity of filing a Claim objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

**10.2.** Objections to Claims. The Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims after the Effective Date. From and after the Effective Date, the Liquidating Trustee may, subject to compliance with the Liquidating Trust Agreement, resolve, settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Objections to Claims must be filed before the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Liquidating Trustee without notice or hearing.

**10.3.**   Estimation of Claims.  Claims may be estimated pursuant to section 502(c) of the Bankruptcy Code and the estimated amount of such Claim will constitute the maximum amount that may be recovered on such Claim from the Disputed Claim Reserve if the Claim later becomes an Allowed Claim.  Nothing contained herein shall be construed to limit or restrict the assertion of Claims by claimants against insurers under any policies of insurance. The availability of insurance, including defenses to payment by the insurer, may be considered in connection with the establishment of any Disputed Claim Reserve.

**10.4.**   Distributions Pending Allowance of Disputed Claim.  The Liquidating Trustee may pay any undisputed portion of such Disputed Claim as provided for in this Plan.

**10.5.**   Disputed Claim Reserves.   Subject to applicable reserves established by the Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement, a Disputed Claim Reserve shall be established for the purpose of effectuating Distributions to holders of Disputed Claims pending the final allowance or disallowance of such Claims in accordance with this Plan.  The applicable Disputed Claim Reserve shall be withheld from the property to be distributed under this Plan until the entry of a Final Order on the allowance or disallowance of such Disputed Claims.  The amount to be set aside in the Disputed Claim Reserve for each Disputed Claim shall be (i)  the amount that the Liquidating Trustee estimates the holder of the Disputed Claim would be entitled to receive under this Plan if the Disputed Claim was an Allowed Claim, or (ii) such lesser or greater amount as determined  by the Bankruptcy Court.

**10.6.**   No Bond Pending Appeal.  The Liquidating Trustee shall not be required to post a bond or provide any security with respect to any appeal of an order allowing or disallowing the Disputed Claim provided the amount set aside in the Disputed Claim Reserve for the applicable Disputed Claim remains in place until the appeal is concluded and any appealed order allowing or disallowing the Disputed Claim in whole or in part becomes a Final Order.

**10.7.**   Late Filed Claims.   Claims filed after the applicable Bar Date shall not be included on the Claims Register unless the Bankruptcy Court, after notice and hearing, enters an order authorizing the claimant to file the Claim after the applicable Bar Date.  The Reorganized Debtor or Liquidating Trustee may object to such a Claim by the later of the Claims Objection Deadline or thirty (30) days after the entry of an order authorizing such a Claim to be filed after the applicable Bar Date. Any late filed Claim so authorized shall only be entitled to Distributions under this Plan if it becomes an Allowed Claim.

**10.8.**   Distributions After Allowance.  Payments and Distributions shall be made to each holder of a Disputed Claim to the extent that the Disputed Claim becomes an Allowed Claim in accordance with the provisions of this Plan governing the Class of Claims to which such holder belongs.

Except as otherwise provided in this Plan, within thirty (30) days after entry of a Final Order on a Disputed Claim, the Liquidating Trustee shall distribute to the holder of such Allowed Claim the distribution (if any) that would have been made to such holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date up to the maximum amount of the applicable Disputed Claim Reserve. After a Disputed Claim is Allowed

24

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

or otherwise resolved and the Allowed amount paid in accordance with this Plan, any Cash that was reserved on account of such Disputed Claim in excess of the amount required to pay the Allowed Claim amount in accordance with this Plan shall be subject to re-distribution to holders of Allowed Claims and Interests in accordance with the provisions of this Plan.

## 11. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

**11.1.** Professional Fee Claims. Each Allowed Professional Fee Claim will be paid in full in Cash: (a) no later than three days after the Professional Fee Claim is Allowed; (b) on any other less favorable terms the holder of an Allowed Professional Fee Claim and the Liquidating Trustee may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

On the Effective Date, to the extent funds are available, and subject to establishing a reserve for the payment of present and estimated expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall fund a reserve in an amount equal to the aggregate amount of professional fee claims not ruled upon by the Bankruptcy Court as of the Effective Date, plus the aggregate amount of all estimated fees and expenses due for periods that have not been billed as of the Effective Date. Only the amount of fees and expenses that are determined to be approved by the Bankruptcy Court will be owed and required to be paid under this Plan. Such reserve shall be used to pay the remaining Professional Fee Claims owing to the Professionals as and when Allowed by the Bankruptcy Court. When all Professional Fee Claims have been paid in full, amounts remaining in such reserve, if any, shall be transferred into the general funds of the Liquidating Trust to be used in accordance with the Liquidating Trust Agreement.

Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Liquidating Trustee its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date no later than the Administrative Claims Bar Date. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the requesting Professional no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**11.2.** Administrative Claims. Holders of Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code, Administrative Claims of Governmental Units for taxes and administrative ordinary course liabilities, must submit a request for payment of such Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from recovering on account of such Claim. A notice prepared by the Debtor will set forth such date and constitute good and sufficient notice of the Administrative Claims Bar Date. The Liquidating Trustee and holders of Allowed Claims shall have twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

**11.3.** Administrative Ordinary Course Liabilities. Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the Debtor's business (other than

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

25

102999-002/1277637_4

Claims of Governmental Units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Claims, unless objected to, shall be paid in Cash in the ordinary course of business, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim.

**11.4.** Administrative Tax Claims. All Administrative Claims by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, will be paid on the later of (i) thirty (30) days following the Effective Date; (ii) thirty (30) days following the entry of a Final Order of the Bankruptcy Court allowing such Administrative Tax Claim or (iii) pursuant to the provisions of, and at the time provided in section 505(b)(2) of the Bankruptcy Code.

## 12. LIQUIDATING TRUST AND LIQUIDATING TRUSTEE

**12.1.** Powers of the Liquidating Trustee

Subject to the provisions of the Liquidating Trust Agreement and with all the powers of a trustee under applicable law, the Liquidating Trustee shall have the power and authority to perform the following acts, among others:

a.   accept the Liquidating Trust Assets transferred and provided to the Liquidating Trust pursuant to the Liquidating Trust Agreement and this Plan;

b.   fund or arrange for the funding of this Plan and administration of the Reorganized Debtor as may be necessary to pay obligations to holders of Allowed Claims under this Plan;

c.   act as the Plan Agent;

d.   file, settle, compromise, withdraw, or litigate to judgment any objections to Claims;

e.   file, settle, compromise, withdraw, or litigate to judgment any motions, applications, adversary proceedings, contested matters and other litigation matters, whether filed or commenced by the Debtor after the Petition Date or by the Liquidating Trustee after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property or the prosecution of any Retained Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

f.   distribute Liquidating Trust Assets to holders of Allowed Claims (the Beneficiaries, as defined in the Liquidating Trust Agreement) in accordance with the terms of this Plan and the Liquidating Trust Agreement;

g.   perfect and secure his/her right, title and interest to any and all Liquidating Trust Assets;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

h.      reduce all of the Liquidating Trust Assets to his possession and conserve, protect, collect and liquidate or otherwise convert all Liquidating Trust Assets into Cash;

i.      release, convey, subordinate or assign any right, title or interest in or to the Liquidating Trust Assets;

j.      pay and discharge any costs, expenses, fees or obligations deemed necessary to preserve the Liquidating Trust Assets, and to protect the Liquidating Trust and the Liquidating Trustee from liability;

k.      deposit Liquidating Trust funds and draw checks and make disbursements thereof;

l.      employ such attorneys, accountants, engineers, agents, tax specialists, other professionals, and clerical assistance as the Liquidating Trustee may deem necessary.  The Liquidating Trustee shall be entitled to rely upon the advice of retained professionals and shall not be liable for any action taken in reliance of such advice; the fees and expenses of all such professionals shall be charges as expenses of the Liquidating Trust and shall be paid upon approval of the Liquidating Trustee;

m.      employ brokers, investment brokers, sales representatives or agents, or other Persons necessary to manage the Liquidating Trust Assets;

n.      exercise any and all powers granted the Liquidating Trustee by any agreements or otherwise applicable law or any statute that serves to increase the extent of the powers granted to the Liquidating Trustee hereunder;

o.      take any action required or permitted by this Plan or the Liquidating Trust Agreement;

p.      execute obligations, whether negotiable or non-negotiable;

q.      sue and be sued;

r.      settle, compromise or adjust by arbitration, or otherwise, any disputes or controversies in favor or against the Liquidating Trust;

s.      waive or release rights of any kind;

t.      appoint, remove and act through agents, managers and employees and confer upon them such power an authority as may be necessary or advisable;

u.      negotiate, renegotiate or enter into any contract or agreements binding the Liquidating Trust, and to execute, acknowledge and deliver any and all investments that are necessary, required or deemed by the Liquidating Trustee to be advisable in connection with the performance of his/her duties;

v.      borrow such sums of money at any time and from time to time for such periods of time upon such terms and conditions from such persons or corporations (including any fiduciary hereunder) for such purposes as may be deemed advisable, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

27

secure such loans with any of the Trust Assets, so long as the terms of any such borrowing provide that no recourse shall be had to the Liquidating Trustee, or the Reorganized Debtor or beneficiary of the Liquidating Trust on any such debt; and

w.      in general, without in any manner limiting any of the foregoing, deal with the Liquidating Trust Assets or any part or parts thereof in all other ways as would be lawful for any person owing the same to deal therewith, whether similar to or different from the ways above specified, at any time or times hereafter.

**12.2.**    Payment of Expenses Incurred by the Liquidating Trust. The Liquidating Trustee, including any successor Liquidating Trustee, may pay the Liquidating Trustee, from the Liquidating Trust Assets, reasonable compensation, as approved by the Liquidating Trust Board, for the Liquidating Trustee's services rendered and reimbursement of expenses incurred. Professionals retained by the Liquidating Trust or the Reorganized Debtor shall be entitled to reasonable compensation from the Liquidating Trust Assets for services rendered and reimbursement of expenses incurred. The payment of the fees and expenses of the professionals retained by the Liquidating Trustee shall be made in the ordinary course of business from the Liquidating Trust Assets.

**12.3.**    Exculpation and Indemnification. The Liquidating Trustee shall perform the duties and obligations imposed on the Liquidating Trustee by this Plan and the Liquidating Trust Agreement with reasonable diligence and care. The Liquidating Trustee, the Liquidating Trust Board, and any member, officer, director or employee of, or attorney or other professional for the foregoing shall not be liable for actions taken or omitted in their respective capacities under the terms of the Liquidating Trust Agreement or this Plan, except to the extent those acts are determined by a final order of a court with jurisdiction to arise out of fraud, willful misconduct, or gross negligence, willful disregard of their duties, or materially detrimental and willful breach of this Plan or the Liquidating Trust Agreement. The Liquidating Trustee, the Liquidating Trust Board, and any member, officer, director or employee of, or attorney or other professional for the foregoing shall be entitled to indemnification and reimbursement for all losses, fees, and expenses, including but not limited to, attorney's fees and costs, in defending any and all of their actions or inactions except to the extent those acts are determined by a final order of a court with jurisdiction to arise out of fraud, willful misconduct, or gross negligence, willful disregard of their duties, or materially detrimental and willful breach of this Plan or the Liquidating Trust Agreement. In all respects, each of the foregoing parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities and shall be fully protected in acting or in refraining from action in accordance with such advice. Any indemnification claim of the Liquidating Trustee, the Liquidating Trust Board, and any member, officer, director or employee of, or attorney or other professional for the foregoing shall be satisfied solely from the assets of the Liquidating Trust.

**12.4.**    Retention of Funds Prior to Distribution. The Liquidating Trustee shall collect all Cash constituting Liquidating Trust Assets and, pending distribution, shall deposit such Cash with a FDIC-insured financial institution regularly providing banking services. The Liquidating Trustee will deposit Cash so that it is adequately insured. Notwithstanding the foregoing, the Liquidating Trustee may invest all Cash funds (including any earnings thereon or proceeds therefrom) in the same manner as chapter 7 trustees are required to invest funds pursuant to the guidelines of the United States Trustee's Office, provided that the Liquidating Trustee shall

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

28

102999-002/1277637_4

invest funds held only in demand and time deposits, such as short-term certificates of deposit, in banks or savings institutions, or other temporary, liquid and low-risk investments, such as short-term U.S. Treasury bills.  The Liquidating Trustee shall hold all such funds until they are distributed pursuant to this Plan.

The Liquidating Trustee will not be required to post a bond or be audited or monitored except as otherwise may be expressly provided in the Liquidating Trust Agreement.  Forty-five (45) days after termination of the Liquidating Trust, the Liquidating Trustee will (i) file with the Bankruptcy Court, if the Case is still open, or (ii) serve upon Taberna and the Warm Jones Lenders, if the Case has been closed, an unaudited written report and accounting showing a summary of the revenues, expenses and distributions of the Liquidating Trust from the Effective Date until the termination of the Liquidating Trust.

**12.5.**  Conflict Between Plan and Liquidating Trust Agreement.  In the event of any direct conflict between the terms of this Plan and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall prevail.

**12.6.**  Representation of Liquidating Trust.  The professionals employed by the Liquidating Trust are expressly authorized to simultaneously represent any party on any matter not directly adverse to the Liquidating Trust with respect to the particular representation of the Liquidating Trust.

**12.7.**  Termination of the Liquidating Trust.  The Liquidating Trust shall remain and continue in full force and effect until the earlier of three  (3) years from the Effective Date or the date on which (1) all Liquidating Trust Assets have been distributed or abandoned, (2) all costs, expenses, and obligations incurred in administering the Liquidating Trust have been fully paid, and (3) all remaining income and proceeds of the Liquidating Trust Assets have been distributed in accordance with the provisions of this Plan; provided, however, that if the complete liquidation of the Liquidating Trust Assets and satisfaction of all remaining obligations, liabilities and expenses of the Liquidating Trust pursuant to this Plan has not been completed prior to three  (3) years from the Effective Date, the Liquidating Trustee may, with the approval of the Liquidating Trust Board extend the termination date of the Liquidating Trust for a specified period of time in order to complete the purpose of the Liquidating Trust as set forth in this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall at all times endeavor to liquidate the Trust Assets expeditiously, and in no event shall the Liquidating Trustee unduly prolong the duration of the Trust.

On the termination date of the Liquidating Trust, the Liquidating Trustee will execute and deliver any and all documents and instruments reasonably requested to evidence such termination.  Upon termination of the Liquidating Trust, the Liquidating Trustee will be forever discharged and released from all power, duties, responsibilities and liabilities pursuant to the Liquidating Trust other than those attributable to fraud, gross negligence or willful misconduct of the Liquidating Trustee.

## 13.    CONFIRMATION AND CONSUMMATION OF THIS PLAN

**13.1.**  Conditions Precedent to Confirmation.  The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 13.4 of this Plan:

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

a.     The Bankruptcy Court shall have entered the Confirmation Order in a form and substance reasonably acceptable to the Debtor, Taberna and the Warm Jones Lenders confirming this Plan (this Plan being in the form as filed or amended as provided herein).

**13.2.**    Occurrence of the Effective Date.    The following are the conditions to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 13.4 below:

a.     The Bankruptcy Court shall have entered the Confirmation Order in a form and substance reasonably acceptable to the Debtor, Taberna and the Warm Jones Lenders confirming this Plan (being in the form as filed or amended as provided herein).

b.     The Confirmation Order shall have become a Final Order.

c.     All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

d.     The Debtor shall have established, or made provisions with the proposed Liquidating Trustee to establish, each of the reserves required under this Plan.

e.     There shall not be in effect on the Effective Date any (i) order entered by any court of competent jurisdiction, (ii) any order, opinion, ruling or other decision entered by any administrative or governmental entity, or (iii) applicable law in effect staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Plan.

f.     No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall remain pending.

g.     All transactions contemplated by this Plan for the implementation thereof on or before the Effective Date shall have been accomplished or waived.

h.     The Debtor, Taberna and the Warm Jones Lenders shall have approved all documents to be executed in connection with the occurrence of the Effective Date of this Plan, including the Liquidating Trust Agreement and any documents filed as part of the Plan Supplement, which approvals shall not be unreasonably withheld.

i.     All conditions to the consummation of the transactions contemplated by this Plan on or prior to the Effective Date shall have been satisfied or waived.

**13.3.**    Notice of Effective Date.  Within three (3) days of the occurrence of the Effective Date, the Reorganized Debtor shall file on the docket of the Bankruptcy Court a Notice of Effective Date stating that (1) all conditions to the occurrence of the Effective Date have been satisfied or waived with the consent of Taberna and the Warm Jones Lenders, (2) the Effective Date has occurred and specifying the date thereof for all purposes under this Plan, and (3) setting forth the name, address, email address and telephone number of the Liquidating Trustee.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**13.4.**    Substantial Consummation.  On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.5.**    Waiver of Conditions.  Each of the conditions set forth in Section 13.2 of this Plan, other than Sections 13.2(a), (c), (e), (g), and (h), may be waived in whole or in part by written consent of the Debtor, Taberna and the Warm Jones Lenders.

**13.6.**    Revocation, Withdrawal, Non-Consummation.  The Debtor reserves the right, in consultation with Taberna and the Warm Jones Lenders, to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file any subsequent plan of reorganization.  If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor or any other Person. In the event that the Debtor revokes or withdraws this Plan without the written consent of Taberna and the Warm Jones Lenders, all rights of exclusivity to file and obtain acceptances of a plan pursuant to Section 1121 of the Bankruptcy Code shall be automatically terminated and may not be reinstated.

## 14.    EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS

**14.1.**    Compromise and Settlement.  Except as provided in Section 14.2 of this Plan, it is not the intent of the Debtor that confirmation of this Plan shall, in any manner, alter or amend any settlement and compromise between the Debtor and any Person that has been approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent that there is any conflict between the terms of this Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Liquidating Trustee may compromise and settle Claims against the Debtor and claims that they have against other Persons.  The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date.

After the Effective Date, the Liquidating Trustee may compromise and settle any Claims against the Debtor or the Liquidating Trust and claims he or she may have against other Persons without approval from the Bankruptcy Court.

**14.2.**    Binding Effect of Plan.  The provisions of this Plan shall bind the Debtor, any Person issuing securities under this Plan, any Person acquiring property under this Plan, and any Creditor or Interest holder in the Debtor, whether or not the Claim or Interest of such Creditor or Interest holder is impaired under this Plan, and whether or not such Creditor or Interest holder has accepted this Plan, and whether or not such Creditor or Interest holder receives or is entitled

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

31

102999-002/1277637_4

to receive anything under this Plan, and the rights if any under this Plan shall be in exchange for, and in complete satisfaction, settlement and release of, all Claims and Interests of any nature whatsoever against the Debtor or the Estate, or Assets.

Neither the Liquidating Trust, the Reorganized Debtor, nor any of their successors or assigns, shall be responsible for any obligations of, or Claims against, the Debtor, except for any such Claims or obligations specifically and expressly provided in this Plan.

**14.3.** Exculpation and Limitation of Liability. Notwithstanding any other provision of this Plan to the contrary, no holder of a Claim or Interest, no Person who has held, hold, or may hold Claims against or Interests in the Debtor prior to the Effective Date, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of any of the foregoing, shall have any cause of action or right of action, whether in law or equity, whether for breach of contract, statute, or tort claim, against the Debtor (including its directors, officers and employees), the Reorganized Debtor (including their directors, officers and employees, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Board, Taberna, the Warm Jones Lenders, the legal, financial or restructuring advisors of any of the foregoing, their respective successors or assigns, or the Estate, assets, properties, or interests in property, for any act or omission in connection with, relating to, or arising out of, this Case, the proposal and solicitation of this Plan in accordance with section 1125(e) of the Bankruptcy Code, the filing of and pursuit of Confirmation of this Plan, consummation of this Plan, or the administration of the Debtor, this Plan or the property to be distributed under this Plan.

**14.4.** Plan Injunction. **The provisions of this Plan shall bind the Debtor, any Person issuing securities under this Plan, any Person acquiring property under this Plan, and any Creditor or Interest holder in the Debtor, whether or not the Claim or Interest of such Creditor or Interest holder is impaired under this Plan and whether or not such Creditor or Interest holder has accepted this Plan and whether or not such Creditor or Interest holder receives or is entitled to receive anything under this Plan. Therefore, except as otherwise provided in this Plan or prior orders of the Bankruptcy Court, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor prior to the Effective Date, or any Person who may claim by or through them, are prohibited from taking any of the following actions against the Debtor, the Reorganized Debtor, the Liquidating Trust, the Liquidating Trust Board, Taberna, the Warm Jones Lenders, the legal, financial or restructuring advisors of any of the foregoing, or each of their respective successors or assigns, or the Estate, assets, properties, or interests in property, on account of any such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding to enforce such Claim or Interest; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order regarding such Claim or Interest; (c) creating, perfecting or enforcing any Lien or encumbrance relating to such Claim or Interest; and (d) commencing or continuing, in any manner or in any place, (i) any action or proceeding that is based on a claim or cause of action for which there are releases or exculpations provided in this Plan, or (ii) does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.**

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

32

102999-002/1277637_4

**14.5.**    Officers and Directors Liability Insurance.    Nothing in this Plan shall (a) constitute a determination that the proceeds, if any, of any insurance policies are property of the Estate, or (b) impair, abridge, or otherwise alter the scope, extent, validity, enforceability or binding effect of any insurance policies at any time purchased or entered into by the Debtor, and all such insurance policies shall remain valid, binding and enforceable against the respective insurance carriers as if the Debtor had not filed for relief under chapter 11 of the Bankruptcy Code.    Additionally, and for avoidance of doubt, the rights of any Persons to collect proceeds from any such insurance policies remains unchanged notwithstanding the confirmation of this Plan.

Notwithstanding any provision of this Plan or the Confirmation Order, the officers and directors of the Debtor shall be entitled to retain any rights to indemnity and their rights for payment or reimbursement of defense costs from the existing or prior  insurance policies in accordance with the provisions of such policies; provided, however, that in no event shall the Debtor, the Reorganized Debtor or the Liquidating Trust be liable for any such indemnity obligation or payment or reimbursement of defense costs over and above any amounts reimbursed to the Debtor, the Reorganized Debtor or the Liquidating Trust by or under existing or prior insurance policies.

**14.6.**    Setoffs and Recoupment.  Except as otherwise expressly provided for in this Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor or the Liquidating Trustee may setoff and/ or recoup against any Claim and the Distributions to be made pursuant to this Plan on account of such Claim (before such Distribution is made), any Claims, rights, and Causes of Action of any nature that the Reorganized Debtor or the Liquidating Trustee, as applicable, may hold against the holder of such Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise).  Nothing contained in this Plan shall limit or restrict or impair any rights of recoupment or setoff of the holders of Claims against the Debtor.

**14.7.**    Release of Liens.  Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created by the Debtor pursuant to this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is an Allowed Claim as of the Effective Date, all Liens against any Assets of the Debtor that are transferred to Purchaser or the Liquidating Trust shall be fully released and discharged, and all of the right, title, and interest of any holder of such Liens shall attach to the proceeds, if any.

In addition to, and in no way a limitation of, the foregoing, to the extent the Debtor's property or assets are encumbered by Liens of any nature for which any holder of such Liens does not have an Allowed Claim against the Debtor, such Liens shall be deemed fully released and discharged for all purposes and such holder shall execute such documents as reasonably requested by Debtor or the Liquidating Trustee, as applicable, in form and substance as may be necessary or appropriate to evidence the release of any such  Liens of any nature.  If such holder fails to execute such documents, the Liquidating Trustee is authorized to execute such documents on behalf of such holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**14.8.**    Satisfaction of Subordination Rights.  Unless specifically provided otherwise in this Plan, all Claims against the Debtor and all rights and claims between or among holders of Claims relating in any manner whatsoever to Claims against the Debtor, based upon any claimed subordination rights (if any), shall be deemed satisfied by the Distributions under this Plan to holders of Claims having such subordination rights.

**14.9.**    Rights of Defendants in Avoidance Actions.  Notwithstanding any other provision in this Plan, if a defendant in an action brought by the Debtor or the Liquidating Trustee under sections 547 or 548 of the Bankruptcy Code is ordered to pay the Estate or the Liquidating Trust on account of that Retained Causes of Action and that defendant, thereafter, pays the amount ordered, then that defendant shall be entitled to an Allowed Claim for the amount so paid to the extent provided in Section 502(h) of the Bankruptcy Code.  Any Claim allowed under this section shall be added to the Claims Register and shall be entitled to treatment and distribution under this Plan as a Class 4 Allowed General Unsecured Claim.

## 15.    RETENTION OF JURISDICTION

Under sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under or related to the Case and this Plan, to the fullest extent permitted by law, including jurisdiction to:

a.    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan, Liquidating Trust Agreement and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Liquidating Trust Agreement or the Confirmation Order;

b.    hear and determine any disputes regarding the interpretation or implementation or breach of any APA;

c.    hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency in this Plan, the Liquidating Trust Agreement or any order of the Bankruptcy Court;

d.    issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of this Plan, the Liquidating Trust Agreement or the Confirmation Order;

e.    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

f.    hear and determine any matters arising in connection with or relating to the Liquidating Trust Agreement, this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Liquidating Trust Agreement or the Confirmation Order;

g.    enforce all orders, judgments, injunctions, releases, exculpations and rulings entered in connection with the Case;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

h.      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

i.      hear and determine matters relating to the allowance, disallowance, determination, classification, estimation and/or liquidation of Claims or Interests against the Debtor and to enter or enforce any order requiring the filing of any such Claim or Interest before a particular date;

j.      hear and determine motions, applications, adversary proceedings, contested matters and other litigation matters filed or commenced after the Petition Date by the Debtor in which the Reorganized Debtor or the Liquidating Trustee have substituted in as a party including proceedings with respect to the rights and claims of the Debtor to recover property in Avoidance Actions, or the prosecution of any retained Causes of Action, or otherwise seeking to collect or recover on account of any Causes of Action;

k.      hear and determine motions, applications, adversary proceedings, contested matters and other litigation matters filed or commenced by the Reorganized Debtor or the Liquidating Trustee after the Effective Date, including proceedings with respect to the rights and claims of the Debtor to recover property or the prosecution of any Retained Causes of Action, or otherwise seeking to collect or recover on account of any Retained Causes of Action;

l.      hear and determine all applications, Claims, adversary proceedings and contested matters pending as of the Effective Date; and

m.      enter a final decree closing the Case.

## 16.    MISCELLANEOUS PROVISIONS

**16.1.**    Amendments and Modifications.  The Debtor may alter, supplement, amend, or modify this Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date with the written consent of Taberna and the Warm Jones Lenders.

After the Confirmation Date and prior to "substantial consummation" of this Plan, the Debtor, with the written consent of the Taberna and the Warm Jones Lenders,  or the Liquidating Trustee, as applicable, may, institute proceedings under section 1127(b) of the Bankruptcy Code in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**16.2.**    Payment of Statutory Fees.  On or before the Effective Date, the Debtor shall have paid in full, in Cash (including by check or ACH transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

**16.3.**    Term of Injunctions or Stay.  Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for in the Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

**16.4.**    Dissolution of Committees.  Any and all Committees appointed under the Bankruptcy Code, if any, shall be dissolved and the members of any such Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Case upon the later of (a) the Effective Date of this Plan, (b) the Confirmation Order becoming a Final Order and (c) any orders entered in connection with the applications for reimbursement of fees and expenses of the Professionals for the Committees and the expenses of the Committee members becoming Final Orders.

**16.5.**    No Admissions.  To the extent that the Effective Date does not occur, nothing in this Plan shall be deemed an admission by the Debtor or any other person or Person with respect to any matter set forth in this Plan, including, without limitation, liability with respect to any Claim.

**16.6.**    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Nevada, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Liquidating Trust Agreement and Plan and any agreements, documents, and instruments executed in connection with the Liquidating Trust Agreement and Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), provided, however, that corporate governance matters relating to (i) the Debtor shall be governed by the laws of the state of organization of the Debtor and (ii) the Liquidating Trust shall be governed by the laws of the State of Delaware.

**16.7.**    Subordination.  The right of the Debtor, and upon the Effective Date, the Liquidating Trustee to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code is fully reserved.

**16.8.**    Plan Supplements.  Any exhibits or schedules to be filed as part of this Plan not initially filed with this Plan shall be subsequently filed in a Plan Supplement(s) prior to the Confirmation Hearing. Holders of Claims or Interests may obtain a copy of Plan Supplements upon written request to counsel for the Debtor or may view Plan Supplements online any time through the Bankruptcy Court's PACER System at *www.nvb.uscourts.gov*. The Debtor may amend the Plan Supplement and any attachments thereto, through and including the Confirmation Date.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

36

**16.9.** Notices. Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

**Desert Capital REIT, Inc.**
**c/o The Liquidating Trustee:**

At the address set forth in the Notice of Effective Date filed in accordance with section 13.2 of this Plan

**16.10.** Severability of Plan Provisions. If, before entry of the Confirmation Order, the Bankruptcy Court holds that any provision of this Plan is invalid, void or unenforceable, the Debtor, at its option, and with the written consent of Taberna and the Warm Jones Lenders, may amend or modify this Plan to correct the defect, by amending or deleting the offending provision or otherwise. Otherwise, this Plan shall be withdrawn. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

**16.11.** U.S. Trustee Quarterly Reports. After the Confirmation Date, the Liquidating Trustee will file with the Bankruptcy Court, and serve on the U.S. Trustee, quarterly financial reports in a format prescribed by the U.S. Trustee, and the Liquidating Trustee will pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28 U.S.C. §1930(a)(6).

**16.12.** Default under this Plan. Except as otherwise provided for in this Plan, after the Effective Date, in the event of an alleged default by the Liquidating Trustee under this Plan, any party alleging such default shall provide written notice of the default (the "Plan Default Notice") to the Liquidating Trustee at the address set forth in Notice of Effective Date filed pursuant to section 13.2(i) of this Plan at the address set forth in this Plan. The Liquidating Trustee shall have thirty (30) days from receipt of the Default Notice to cure any actual default that may have occurred.

The Liquidating Trustee reserves the right to dispute that an alleged default has occurred and shall notify the party alleging such default that the Liquidating Trustee contends no default has occurred, with such notice to be sent within the thirty (30) day time period following receipt of the Default Notice. In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default and with respect to any remedy therefor.

. . .

. . .

. . .

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

37

102999-002/1277637_4

In the event the Liquidating Trustee fails to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights under applicable law.

Dated: September 2, 2011

Respectfully Submitted,

**DESERT CAPITAL REIT, INC.**

By: _____

David Bagley, Chief Operating Officer

Gordon Silver
Attorneys At Law
Ninth Floor
1960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

1

2
**Plan Schedule I:        Retained Causes of Action**

3
(to be provided in Plan Supplement)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

39

102999-002/1277637_4

**Plan Schedule II:**

**List of Assumed and Assigned Executory Contracts and Unexpired Leases**

(to be provided in Plan Supplement)

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4

**Plan Schedule III:    Liquidating Trust Agreement**

(to be provided in Plan Supplement)

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102999-002/1277637_4